IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No. 14-59631 |
| ANESTHESIA HEALTHCARE PARTNERS, INC., | : | |
| | : | Chapter 11 |
| Debtor. | : | |

| | | |
|---|---|---|
| | : | |
| IN RE: | : | |
| | : | Case No. 14-59632 |
| AHP ASSOCIATES OF TEXAS, P.A., | : | |
| | : | Chapter 11 |
| Debtor. | : | |

| | | |
|---|---|---|
| | : | |
| IN RE: | : | |
| | : | Case No. 14-59633 |
| AHP OF CENTRAL GEORGIA, P.C., | : | |
| | : | Chapter 11 |
| Debtor. | : | |

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No. 14-59634 |
| AHP OF ILLINOIS, INC., | : | |
| | : | Chapter 11 |
| Debtor. | : | |

| | | |
|---|---|---|
| | : | |
| IN RE: | : | |
| | : | Case No. 14-59635 |
| AHP OF NORTH CAROLINA, INC., | : | |
| | : | Chapter 11 |
| Debtor. | : | |

:

1

| | | |
|---|---|---|
| IN RE: | : | Case No. 14-59636 |
| AHP OF NORTHWESTERN LOUISIANA, LLC, | : : : | Chapter 11 |
| Debtor. | : | |
| IN RE: | : : | Case No. 14-59637 |
| AHPM OF GEORGIA, INC., | : : | Chapter 11 |
| Debtor. | : | |
| IN RE: | : : | Case No. 14-59639 |
| ANESTHESIA HEALTHCARE PARTNERSOF FLORIDA, INC,.INC., | : : : | Chapter 11 |
| Debtor. | : | |
| IN RE: | : : | Case No. 14-59640 |
| HBL ANESTHESIA SERVICE, LLC, | : : | Chapter 11 |
| Debtor. | : | |

**DECLARATION OF SEAN M. LYNCH IN SUPPORT OF FIRST DAY MOTIONS**

**COUNTY OF GWINNETT**

**STATE OF GEORGIA**

PERSONALLY APPEARED before the undersigned attesting officer, duly authorized to administer oaths, Sean M. Lynch, who, after being duly sworn, deposes and states on oath as follows:

1. My name is Sean M. Lynch. I am a resident of Gwinnett County, Georgia. I am over the age of majority, and I am competent to make this Declaration. I make this Declaration under penalty

of perjury. I am the Chief Executive Officer and/or managing member of Anesthesia Healthcare Partners, Inc., AHPM of Georgia, Inc., AHP of Central Georgia, P.C., AHP of Northwestern Louisiana, LLC, AHP of North Carolina, Anesthesia Healthcare Partners of Florida, Inc., AHP Associates of Texas, P.A., MedFinancial, LLC, AHP of Illinois, Inc. and HBL Anesthesia Service, LLC (collectively, the "Debtors" and each individually, a "Debtor"), and this Declaration is made on the basis of my own personal knowledge except as otherwise expressly stated herein.

2. On May 15, 2014 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Debtors are operating as debtors-in-possession pursuant to 11 U.S.C. §§1107 and 1108.

## General Background regarding Debtors

3. Each of the Debtors contracts with health care entities such as hospitals, private clinics and ambulatory service centers in their respective geographical areas to provide anesthesia management and/or support services.

4. The Debtors' principals are solely Mr. Sean M. Lynch. Mr. Lynch has over 40 years of experience operating anesthesia management or holding related health care positions. Mr. Lynch owns 100% of each Debtor and is the CEO or managing member of each of the Debtors.

5. In total, the Debtors have approximately 38 independent contractor providers and provide services for approximately 14 healthcare facilities.

6. In connection with the operation of Debtors' businesses, Debtors utilize its principal management company, Anesthesia Healthcare Partners, Inc. Mr. Lynch owns 100% of Anesthesia Healthcare Partners, Inc., which has approximately 13 employees, including Mr.

3

Lynch, who provide accounting, clinical support services, and management consulting services to the Debtors. Debtors utilize the services of MedFinancial, LLC, as well as outsourced billing support services, for its billing and collections requirements. Mr. Lynch owns 100% of MedFinancial, LLC. As a result of utilizing and outsourcing outside contractors, MedFinancial does not have any employees. The current annual salary received by Mr. Lynch from AHP is $997,360.59 (net taxable income on W2 for 2013, with an additional $782,378.00 paid by AHP to Mr. Lynch in S-Corp tax reimbursement). Dr. Andre Dobson is an independent contractor, and serves in the capacity of national medical director. Dr. Dobson is owed deferred stipends totaling $36,083.32. Dr. William Hoffman is an independent contractor and provides essential medical review and consultation for and on behalf of Debtors. Dr. Hoffman is owed deferred stipends totaling $13,333.32. Mr. Lynch is owed deferred salary totaling $83,333.32 and deferred tax distribution totaling $94,097.80 for 2014. The S Corp distributes funds for the companies' income taxes due to the prior year to Mr. Lynch, with a projected balance owing of $248,243.00 for 2013[1]. The Debtor's employees are paid through May 15, 2014 and independent contractor providers are paid through April 30, 2014. Debtor's healthcare professionals are compensated as independent contractors under Physician Independent Contractor Professional Services Agreements and Certified Registered Nurse Anesthetists Professional Services Agreements.

7. The assets of each of the Debtors have been pledged to SunTrust Bank, in its capacity as administrative agent for the Lender (the "Administrative Agent")("Lender"). The Debtors estimate that the total outstanding principal loan balances as of the Petition Date owing to Lender on its Term Loans total $4,500.000.00, and on its Revolving Loans total $4,000,000.00

---

[1] Both the payment of Mr. Lynch's salary and the payment of S-Corp tax liability directly to Mr. Lynch has never been objected to or disputed by any creditor, including SunTrust.

4

(hereinafter the "Lender Debt"), in addition to forced penalties and fees imposed by SunTrust in excess of $100,000.00. Lender has asserted liens upon and security interests (hereinafter the "Lender Lien") against the assets of the Debtors, including accounts receivable owned by the Debtors, and the proceeds thereof, and against Debtors' inventory, equipment and fixtures (hereinafter the "Collateral").

8. Debtors defaulted under the SunTrust loan obligation as follows:

   a) September 30, 2013- $500,000.00

   b) December 31, 2013- $500,000.00

   c) March 31, 2014- $500,000.00

Lender and the Debtors entered into several forbearance agreements in attempts to rework the loans, market the business or re-finance the Lender Debt. Debtors have continually cooperated with Lender throughout this process, paying mutually agreed upon consultants (and subsequently consultants directed by Lender) in excess of $1,700,000.00; and changed to outsourced billing companies, decisions which turned out to be detrimental to Debtors' businesses.

9. In conformity with industry standards and regulations, each Debtor has two separate lockboxes for various government and insurance payors (Medicaid/Medicare and private dollars), into which the respective collections are deposited and maintained at Lender's banking institution. Customers/payors may pay claims electronically or by check to the appropriate lockbox. The cash is then swept daily from the other entities into the main Anesthesia Healthcare Partners, Inc sweep account. Cash is then transferred from the Anesthesia Healthcare Partners, Inc. sweep account to the Anesthesia Healthcare Partners, Inc. operating account.

10. Debtors intend to file a motion requesting that the Court authorize Debtors to maintain their pre-petition bank accounts and cash management system and waive any requirement for them to close their bank accounts and open new debtor in possession accounts. Debtors need the ability to collect their accounts receivable without interruption. Requiring the Debtors to close their bank accounts would cause severe disruption with Debtors' ongoing operations.

## Accounts Receivable, Inventory and FF&E

11. As of the Petition Date, Debtors' collective accounts receivable is estimated to be $3,436,268.80. Debtors maintain a small inventory of medical supplies and drugs. The Debtors own the furniture and fixtures used in their operations. Debtors lease software and hardware, from GE Healthcare, Cisco Systems, & GE Capital.

12. Debtor is a party to a Medicare Provider Agreement with the United States Department of Health and Human Services ("HHS") through the Centers for Medicare and Medicaid Services ("CMS"). Cahaba Government Benefit Administrators is the fiscal intermediary for CMS and is responsible for overseeing payments made by Medicare to Debtors. Blue Cross and Blue Shield of Georgia was the predecessor fiscal intermediary.

13. Debtors lease their business premises from SML Holdings and G&S Duluth Holdings. Debtors are current on all lease payments due the 15th of each month. Mr. Lynch owns 100% of SML Holdings, LLC and 50% of G&S Duluth Holdings, LLC.

14. Debtors have an interest in the following litigation matters:

<u>Dwayne Maultsby and Anesthesia Associates, LLC v. Sean Lynch and Anesthesia Healthcare Partners</u>
American Arbitration Association
Case Number: 30 523 00739 12
No specific claims or claim amount was listed, but believed to be approximately $75,000.00

6

AHPM of Georgia, Inc. v. Eclipse Anesthesia, LLC, and MidState Anesthesia, LLC v. MedFinancial, LLC
American Health Lawyers Association/Alternative Dispute Resolution Service
Case Number: A-032213-1083
Breach of Contract
Claim Amount: $240,000.00
Counter-claim Amount- approx. $2,000,000.00

Elite Resources, LLC and ISYS Softech Pvt. Ltd. v. MedFinancial, LLC and Anesthesia Healthcare Partners, Inc.
Gwinnett County State Court
Case Number: 13-C-01846-6
Breach of Letter of Arrangement
Claim Amount: $332,500.00
Claim Against: unknown

Coastal Anesthesia, P.A. and Michael P. Ederer, D.O. v. Crestview Hospital, Inc. d/b/a North Okaloosa Medical Center, Anesthesia Healthcare Partners of Florida, Inc., Anesthesia Healthcare Partners, Inc., and David Fuller
Circuit Court of Okaloosa County Florida
Case Number: 2012CA000077C
Contribution Claim
No claim amount

Martin G. Mondry, M.D. v. HBL Anesthesia Services, LLC
American Arbitration Association
Case Number: 30 523 00358 13
Breach of Contract
Claim Amount: $128,550.00

MedFinancial, LLC v. Galen Advisors, LLC f/k/a Galen Billing Services, LLC
Fulton County Superior Court
Case Number: 2013CV236796
Breach of Contract
Claim Amount: $8,100,000.00

Anesthesia Healthcare Partners, Inc., AHP of Central Georgia, P.C., AHP of Central Florida ASC, Inc., AHP of Florida, Inc., AHP of Altamonte Springs, LLC, AHP of Orlando, LLC, AHP of Kissimmee, LLC, AHP of South Broward, LLC, AHP of East Tennessee, PLLC, AHP Associates of Texas, P.A., AHP of Connecticut, LLC, AHP of Northwestern Louisiana, LLC, and AHP of Western Louisiana, LLC v. Cigna Corporation, Connecticut General Life Insurance Company, and Cigna Health Corporation
United States District Court, Northern District of Georgia
Case Number: 1:14-cv-00776-MHS

7

Breach of Contract
Claim Amount: $16,970,750.00

15. Debtors estimate that their obligations to other creditors, <u>including the disputed claims listed in Section 14 above</u> (excluding employees, related taxes, and Lender), are approximately $3,704,204.50. AHP has an accrued liability to MD Solutions in a settlement of a legal dispute for $130,000.00. AHP has a potential liability of approximately $221,000.00 to Anthem BCBS of Virginia for alleged overpayment of claims. AHP has a contingent obligation in the amount of $1,500,000.00 due to Greg Wachowiak, a former shareholder of AHP, which is payable only after satisfaction of the entire Lender Debt, arising out of a settlement agreement reached with Mr. Wachowiak from shareholder litigation in Nevada.

### Obligations to Employees

16. The Debtor's Employees are compensated on a semi-monthly basis payable on the 15th and the last day of the month. Debtors' MD independent contractors are paid monthly on the 10th of the month and the CRNA independent contractors are paid semi- monthly on the 7th and 22nd of the month. Debtors' next payroll is due Friday, May 30th, 2014, and covers the period from May 16th, 2014 through May 31, 2014 (the " Employee Payroll Period"). The net payroll due on May 30, 2014, totals approximately $74,939.24. The stipend due to CRNA Independent Contractors on May 22nd totals $176,006.28 and the stipend due to MD Independent Contractors on June 10 totals $316,901.26. (the "Independent Contractor Payment Period") The Independent Contractor Payment Period includes a pre-petition period during which payments accrued. Mr. Lynch is paid monthly on the last day of the month. His next payroll is due May 30, 2014 and includes the pre-petition period from May 1 through May 15, 2014. Related payroll taxes total approximately $36,720.61. In addition, Debtor will be required to pay the following employee

8

benefits: a group insurance premium in the amount of approximately $15,000.00 and a life insurance premium in the amount of approximately $1,177.00. A payroll and benefits chart summarizing the Employee Payroll Period's and Independent Contractor's Payment period obligations and the pre-petition amounts Debtors are requesting be paid is below:

Totals- Pre-petition / Post-petition

| | | |
|---|---|---|
| Net Payroll | | $74,939.79 |
| Payroll Taxes | | $43,734.24 |
| Benefits | | $16,177.00 |
| Subtotals | | $134,851.03 |
| I/C Stipends | $176,006.28 | $316,901.26 |
| Totals: | $627,758.57 | |

Mr. Lynch- Pre-petition Payroll- $26,397.63    Pre-petition Taxes- $15,269.05

Pre-petition Tax Distribution- $15,269.05

17. Debtors need the ability to pay their "Employee Obligations" as defined in the Debtors' first day Motion seeking authority to pay employees. Delay in paying these obligations to employees will severely disrupt and damage the Debtors' relationship with its employees and may irreparably harm employee morale. Moreover, employees will suffer personal financial hardship if they do not receive compensation and benefits due, which may cause employee attrition. If employees leave, the Debtors may be unable to fully operate, impairing Debtors' reorganization efforts.

18. Debtors also seek authority to continue the contractual relationship with their payroll service, ADP, to continue performance of its obligations under its agreement with the Debtors

9

and Debtors' affiliates, provided that sufficient funds therefore are available. The continuance of this relationship with the Debtors' payroll service is necessary to insure there is no disruption in the payment of Debtors' employees and independent contractors, which would harm Debtors' relationship with their employees and independent contractors.

## Use of Cash Collateral

19. Debtors are also seeking authority to use "cash collateral" in the ordinary course of its business through its first day motions. Unless authorized to use "cash collateral" in the ordinary course of its business, Debtors' operations will be impaired and their ability to reorganize will be jeopardized. The Debtors have an immediate need for the use of "cash collateral" for critical operating expenses during the period immediately following the filing of their Chapter 11 cases and prior to any final hearing on their first day motion to use "cash collateral." Unless authorized to use "cash collateral" during the mandatory fifteen (15) day period prior to a final hearing, Debtors' operations will be immediately harmed and their ability to reorganize significantly impaired.

## PST Services Dispute

20. PST Services, Inc. ("PST") provides billing and accounts receivable management services to Debtor pursuant to a Billing Services and Subcontractor Agreement entered into with AHP on February 16, 2012. Although Debtors have the ability in-house to manage its own billing and collection operations, Debtors' were required to engage PST as a condition of SunTrust's forbearance. PST is owed approximately $534,929.57 in pre-petition debt on account for billing & consulting ($300,000 for billing services, $234,929.57 for consulting services).

21. Given the complexity of Debtors' current situation, and the fact that Lender has refused to advance additional funds restricting Debtors' ability to operate and grow the business, Debtors'

management determined that bankruptcy was necessary to protect and preserve the Debtors' business.

22. The Debtors believe that the value of the Debtors' assets and business is such that there is substantial equity for creditors and the equity holders. The Debtors intend to continue to operate in the ordinary course of business and timely propose a plan of reorganization consistent with the provisions of the Bankruptcy Code.

/s/ Sean M. Lynch
Sean M. Lynch

SWORN TO and subscribed before me
this 19th day of May, 2014.

Rachel M Leaptrot
NOTARY PUBLIC

Notary Public, Gwinnett County, Georgia
My Commission Expires July, 11, 2015

11