## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | **Case No. 14-59631** |
| **ANESTHESIA HEALTHCARE** | : | |
| **PARTNERS, INC.,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| | : | **Case No.  14-59632** |
| **AHP ASSOCIATES OF TEXAS, P.A.,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| | : | **Case No. 14-59633** |
| **AHP OF CENTRAL GEORGIA, P.C.,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| | : | **Case No.  14-59634** |
| **AHP OF ILLINOIS, INC.,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| | : | **Case No.  14-59635** |
| **AHP OF NORTH CAROLINA, INC.,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| | : | **Case No.  14-59636** |
| **AHP OF NORTHWESTERN** | : | |
| **LOUISIANA, LLC,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

|  |  |  |
|---|---|---|
| | : | |
| IN RE: | : | |
| | : | **Case No.  14-59637** |
| **AHPM OF GEORGIA, INC.,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

|  |  |  |
|---|---|---|
| | : | |
| IN RE: | : | |
| | : | **Case No.  14-59639** |
| **ANESTHESIA HEALTHCARE** | : | |
| **PARTNERSOF FLORIDA, INC,.INC.,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

|  |  |  |
|---|---|---|
| | : | |
| IN RE: | : | |
| | : | **Case No.  14-59640** |
| **HBL ANESTHESIA SERVICE, LLC,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

## NOTICE OF FILING OF FORM OF PROPOSED
## INTERIM CASH COLLATERAL ORDER

COME NOW the Debtors in the above-captioned Chapter 11 cases, by and through

undersigned counsel, and hereby file this Notice of Filing of Form of Proposed Interim Cash

Collateral Order. The Interim Cash Collateral Order will be presented, substantially in the form

attached hereto as Exhibit "1", at the May 22, 2014 hearing on the Motion for Authority to

Use Cash Collateral and to Provide Adequate Protection.

Respectfully submitted this 20th day of May, 2014.

**THEODORE N. STAPLETON, PC**

 /s/ Theodore N. Stapleton
Theodore N. Stapleton
Georgia Bar No. 675850
Proposed Attorneys for Debtors

Suite 100-B
2802 Paces Ferry Road

Atlanta, Georgia, 30339
Telephone: (770) 436-3334
tstaple@tstaple.com

**EXHIBIT "1" FOLLOWS**

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | **Case No. 14-59631** |
| **ANESTHESIA HEALTHCARE** | : | |
| **PARTNERS, INC.,** | : | |
| | : | **Chapter 11** |
| **Debtor.** | : | |

| | | |
|---|---|---|
| | : | |
| **IN RE:** | : | |
| | : | **Case No.  14-59632** |
| **AHP ASSOCIATES OF TEXAS, P.A.,** | : | |
| | : | **Chapter 11** |
| **Debtor.** | : | |

| | | |
|---|---|---|
| | : | |
| **IN RE:** | : | |
| | : | **Case No. 14-59633** |
| **AHP OF CENTRAL GEORGIA, P.C.,** | : | |
| | : | **Chapter 11** |
| **Debtor.** | : | |

| | | |
|---|---|---|
| | : | |
| **IN RE:** | : | |
| | : | **Case No.  14-59634** |
| **AHP OF ILLINOIS, INC.,** | : | |
| | : | **Chapter 11** |
| **Debtor.** | : | |

:

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No.  14-59635 |
| AHP OF NORTH CAROLINA, INC., | : | |
| | : | Chapter 11 |
| Debtor. | : | |

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No.  14-59636 |
| AHP OF NORTHWESTERN | : | |
| LOUISIANA, LLC, | : | |
| | : | Chapter 11 |
| Debtor. | : | |

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No.  14-59637 |
| AHPM OF GEORGIA, INC., | : | |
| | : | Chapter 11 |
| Debtor. | : | |

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No.  14-59639 |
| ANESTHESIA HEALTHCARE | : | |
| PARTNERSOF FLORIDA, INC,.INC., | : | |
| | : | Chapter 11 |
| Debtor. | : | |

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No.  14-59640 |
| HBL ANESTHESIA SERVICE, LLC, | : | |
| | : | Chapter 11 |
| Debtor. | : | |

**INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362
AND 363 OF THE BANKRUPTCY CODE (I) AUTHORIZING
THE USE OF CASH COLLATERAL AND GRANTING
ADEQUATE PROTECTION AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Anesthesia Healthcare Partners, Inc., AHPM of

Georgia, Inc., AHP of Central Georgia, P.C., AHP of Northwestern Louisiana, LLC, AHP of

North Carolina, Anesthesia Healthcare Partners of Florida, Inc., AHP Associates of Texas, P.A.,

MedFinancial, LLC, AHP of Illinois, Inc. and HBL Anesthesia Service, LLC, debtors and

debtors in possession in the above-captioned chapter 11 cases (each a "Debtor", and collectively

the "Debtors") seeking this Court's authorization pursuant to § 363 of Title 11, United States

Code, 11 U.S.C. § 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 4001 and 9014

of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") to (a) use

Cash Collateral (as defined below) and to provide adequate protection, pursuant to §§ 361 and

363(e) of the Bankruptcy Code, as set forth herein to several banks and other financial

institutions and lenders (the "Lenders"), and Suntrust Bank, in its capacity as administrative

agent for the Lenders (the "Administrative Agent")("Lender") under that certain Credit

Agreement with an effective date of August 28, 2009 (as same may or has been amended,

modified or supplemented and in effect from time to time, including, without limitation, by a

certain First Amendment to Credit Agreement dated as of December 21, 2009, a certain Second

Amendment to Credit Agreement dated as of October 27, 2010, and a certain Third Amendment

to Credit Agreement dated as of June 10, 2011, collectively the "Pre-Petition Loan Agreement"),

among Lender and each of the Debtors herein, as co-borrowers and obligors, and all of the

security, collateral and ancillary agreements and documents executed in connection with the Pre-

Petition Loan Agreement (collectively, the "Pre-Petition Loan Documents"), on account of any

diminution in the value of Lender's interests in the Pre-Petition Collateral (as defined below)

resulting from the (i) use, sale, lease, disposition, shrinkage, decline in market value,

consumption or physical deterioration of the Pre-Petition Collateral, and (ii) the imposition of

the automatic stay pursuant to § 362 of the Bankruptcy Code, (b) seeking a final hearing on the

Motion to consider entry of a final order (a "Final Order") pursuant to Bankruptcy Rule 4001,

and (c) that notice procedures in respect of the Final Hearing be established by this Court to

consider entry of a final order authorizing on a final basis, inter alia, the Debtors' use of Cash

Collateral and the grant of adequate protection to Lender in connection therewith; and due and

sufficient notice of the Motion and of the Final Hearing thereon having been given (including,

without limitation, notice to Lender); and upon the entire record made at the interim hearing

conducted on May __, 2014 ("Interim Hearing"), the Affidavit of Sean M. Lynch, the Debtors'

Chief Executive Officer, in support of the Chapter 11 petitions and first day motions; and the

Court having entered its Order and Notice of Motions Filings and Notice of Hearing on First Day

Motions and Emergency Motions, dated May 19, 2014; and notice of the Interim Hearing having

been given in accordance with Bankruptcy Rules 4001 and 9014, and the Local Rules of this

Court; and all objections, if any, to the interim relief requested in the Motion having been

withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the

interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and

their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best

interests of the Debtors, their estates, and their creditors; and after due deliberation and

consideration, and sufficient cause appearing therefor,

**IT IS HEREBY FOUND THAT:**

A. On May 15, 2015 (the "Filing Date"), the Debtors filed voluntary petitions for relief

with this Court under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The

Debtors are continuing in possession of their property, and operating and managing their

businesses, as debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

B. This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these

proceedings, and over the persons and property affected hereby. Consideration of the Motion

constitutes a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief

sought herein are Sections 105, 361, 362, and 363 of the Bankruptcy Code and Rules 2002,

4001, and 9014 of the Bankruptcy Rules. Venue for the Cases and proceedings on the Motion is

proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.  Without prejudice to the rights of parties in interest as set forth in paragraph 14

herein, the Debtors (on behalf of and for themselves) admit, stipulate, acknowledge and agree

that (collectively, paragraphs C(i) through C(iv) hereof shall be referred to herein as the

"Debtors' Stipulations"):

        (i) Lender asserts, and each Debtor stipulates that, in accordance with the terms

of the Pre-Petition Loan Documents, the Debtors are truly and justly indebted to

Lender, without defense, counterclaim or offset of any kind, and that as of the

Filing Date the Debtors are jointly and severally liable to Lender in respect of the

Pre-Petition Loan Agreement in the approximate aggregate principal amount of

$8,500,000.00 (together with any amounts paid, incurred or accrued prior to

the Filing Date in accordance with the Pre-Petition Loan Documents, unpaid

principal, accrued and unpaid interest, any reimbursement obligations (contingent

or otherwise) in respect of letters of credit, any fees, expenses and disbursements

(including, without limitation, attorneys' fees,  related expenses and

disbursements), treasury, cash management and derivative obligations,

indemnification obligations, and other charges, amounts and costs of whatever

nature owing, whether or not contingent, whenever arising, accrued, accruing,

due, owing, or chargeable in respect of any of the Debtors, or any other borrower

under the Pre-Petition Loan Agreement, including all "Obligations" as described

in the Pre-Petition Loan Agreement (collectively, the "Pre-Petition Obligations").

(ii) Lender further asserts, and each Debtor stipulates that the Pre-Petition Obligations are secured by valid, enforceable, duly perfected liens and security interests (collectively, the "Pre-Petition Liens") granted by each Debtor for the benefit of Lender, on and in all or substantially all of the Debtors' assets, including, but not limited to, all (a) Accounts; (b) all Equipment, Goods, Inventory and Fixtures; (c) all Documents, Instruments and Chattel Paper; (d) all Letters of Credit and Letter-of-Credit Rights; (e) all Pledged Collateral; (f) all Investment Property; (g) all Intellectual Property; (h) all General Intangibles; (i) all money and all Deposit Accounts; (j) all Supporting Obligations; (k) all books and records relating to the Pledged Collateral; and (l) to the extent not covered, all other personal property of the Borrowers, whether tangible or intangible, and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all Proceeds of any insurance, indemnity, warranty or guaranty payable to such Borrower from time to time with respect to any of the foregoing, in each case to the extent set forth in the Pre-Petition Loan Documents (collectively, the "Pre-Petition Collateral");

(iii) Subject to the provisions of paragraph 14 herein, the Debtors acknowledge and agree that: (a) the Pre-Petition Liens are valid, binding, enforceable, non-avoidable and perfected; (b) as of the Petition Date, the Pre-Petition Liens had priority over any and all other liens on the Pre-Petition Collateral, subject only to certain liens otherwise permitted by the Pre-Petition Loan Documents (to the

extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Pre-Petition Liens as of the Filing Date, the "Permitted Prior Liens"); (c) the Pre-Petition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors, enforceable in accordance with the terms of the Pre-petition Credit Documents (other than in respect of the stay of enforcement arising from § 362 of the Bankruptcy Code); (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Pre-Petition Liens or the Pre-Petition Obligations exist, and no portion of the Pre-Petition Liens or the Pre-Petition Obligations is subject to any challenge or defense, including, without limitation, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no offsets, defenses, claims, objections, challenges, causes of actions, and/or choses in action, against Lender and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Pre-Petition Loan Documents, as applicable; (f) as of the Filing Date, the value of the Pre-Petition Collateral securing the Pre-Petition Obligations exceeded the amount of those obligations, and accordingly the Pre-Petition Obligations are allowed secured claims within the meaning of § 506 of the Bankruptcy Code; (g) the Debtors have waived, discharged and released any right they may have to challenge any of the Pre-Petition Obligations and the security for these obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against Lender and/or any

of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees; and (h) any payments made on account of the Pre-Petition Obligations to or for the benefit of Lender prior to the Filing Date were on account of amounts in respect of which Lender was secured, were payments out of Lender's Pre-Petition Collateral, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

(iv) Lender also asserts, and each Debtor stipulates that all of the Debtors' cash that constitutes proceeds of the Pre-Petition Collateral is part of the Pre-Petition Collateral and, therefore, is "cash collateral" of Lender within the meaning of § 363(a) of the Bankruptcy Code (the "Cash Collateral").

D.  The Debtors have asserted that they do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without use of the Cash Collateral. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, and to purchase and supply new inventory and essential services and otherwise finance their operations, is essential to the Debtors' continued viability.  In addition, the Debtors' critical need for use of Cash Collateral is immediate.  In the absence of the use of Cash Collateral on an emergency, interim basis, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors and their estates would occur.  The preservation, maintenance and enhancement of the going concern value of the Debtors are of the utmost significance and importance to a successful reorganization of the Debtors under Chapter 11 of the Bankruptcy Code.

E.  Notice of the Interim Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) Lender, (iii) creditors holding the 20 largest unsecured claims against each Debtor, and all other parties known to the Debtors to assert a lien and/or security interest in any of the Debtors' assets. Sufficient and adequate notice of the Interim Hearing, the issuance and entry of this Interim Order, and the relief requested in the Motion has been given pursuant to §§ 102(1), 363(c) and 363(e) of the Bankruptcy Code, and Bankruptcy Rules 2002 and 4001.

F.  The terms of the interim Cash Collateral arrangement described herein are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

G.  The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001. The permission granted herein to the use of Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Order is in the best interest of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued flow of goods and services necessary to sustain the operation of the Debtors' existing businesses and enhance the Debtors' prospects for successful reorganization.

H.  Based upon the foregoing findings and conclusions, the representations contained in the Motion, and upon the record made before this Court by the Debtors at the Interim Hearing, and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.  The Motion is granted, subject to the terms and conditions set forth in this Interim Order. Subject in all respects to the terms and conditions set forth herein, the Debtors are authorized to use Cash Collateral up through and including the date of the Final Hearing on the terms, for the purposes, and in the amounts set forth in the budget attached hereto as Exhibit "A".  (the "Budget")

2. Additionally, Debtors are authorized to use Cash Collateral to pay any fee or charge assessed against the Debtors under 28 U.S.C. § 1930.

3. The cash management systems required by the Pre-Petition Loan Documents (including, without limitation, any lockbox arrangements) shall remain in place during these Chapter 11 Cases; provided that the Debtors shall be permitted, subject to the Debtors first obtaining the prior written consent of Lender, to make such adjustments to the cash management systems in order to comply with any applicable Local Rules of this Court or guidelines adopted by the Office of the United States Trustee.

4.  In this Interim Order, the term "Replacement Lien" shall mean that, subject to the terms and conditions set forth in this Interim Order, Lender shall have and is hereby granted (effective retroactive to the Filing Date and without the necessity of the execution by the Debtors of mortgages, deeds of trust, security agreements, pledge agreements, financing statements or otherwise), valid and perfected, security interests in, and liens upon all present and after-acquired property of each Debtor of the same character, nature type, and scope as the pre-petition liens held by Lender, including, without limitation, all proceeds, cash, cash equivalents and Cash Collateral contained in any account maintained by the Debtors, and such liens shall attach in the same priority and to the same extent, priority, enforceability, unavoidability and

validity as Lender's security interests and liens in the Pre-Petition Collateral (collectively, with all proceeds and products of any or all of the foregoing, the "Post-Petition Collateral"); provided, however, the Post-Petition Collateral shall not include any claims for relief under Chapter 5 of the Bankruptcy Code or any proceeds thereof.

5. Lender is granted the following adequate protection for any diminution in the value of its interests in the Pre-Petition Collateral from and after the Filing Date resulting from (a) the use, sale, lease, disposition, shrinkage, decline in market value, consumption or physical deterioration of the Pre-Petition Collateral (including Cash Collateral) by the Debtors, and (b) the imposition of the automatic stay pursuant to § 362(a) of the Bankruptcy Code:

a. Lender shall have and are hereby granted the Replacement Liens;

b. If, and to the extent that, the Replacement Liens and adequate protection payments described in paragraph 4 and 5(a) are insufficient to provide adequate protection for Lender, Lender is hereby granted allowed superpriority claims against the Debtors' estates pursuant to § 507(b) of the Bankruptcy Code (the "Lender Superpriority Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code §§ 105,326,328,330,331, 503(b), 507(a), 507(b), 1113 and 1114, and shall at all times be senior to the rights of each Debtor, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings under the Bankruptcy Code.  No cost or expense of administration asserted against the Debtors' estates under §§ 105, 503(b) and 507(b) of the Bankruptcy Code shall be senior to, or *pari passu* with, the Lender Superpriority Claims;

c. As additional adequate protection, the Debtors, without further order of or application to the Court, are directed and authorized to pay Lender in an amount equal to all post-petition interest accruing after the Filing Date with respect to the Pre-Petition Obligations, with such interest to be calculated at the contract rate of six and one-half percent (6.5%) set forth in the Pre-Petition Loan Agreement. The Debtors, without further order of or application to the Court, are directed and authorized to pay Lender the post-petition interest amounts reflected in the Budget in the line item entitled "Adequate Protection" on or before the 15th of each month commencing June 15, 2014; and

d.  As additional adequate protection, the Debtors, without further order of or application to the Court, are directed and authorized to pay the reasonable post-petition out-of-pocket costs and expenses incurred by Lender (including, without limitation, the fees and expenses of counsel and any financial consultants advising Lender) in accordance with the terms of the Pre-Petition Loan Agreement.  Notwithstanding any provision of this Interim Order or the Pre-Petition Loan Documents to the contrary, Lender reserves, and this Final Order is without prejudice to, its rights to, among other things, claim additional interest, fees and expenses (including, without limitation, professional fees and expenses) in an amount greater than the amounts provided for in this Interim Order.

6.  Notwithstanding any provision of this Final Order or the Pre-Petition Loan Documents to the contrary, all provisions for payments to Lender of post-petition interest, fees and expenses (including, without limitation, professional fees and expenses) in respect of the Pre-Petition Obligations shall be without prejudice to the right of any party in interest with

standing to subsequently seek a determination from the Court as to whether Lender was entitled

to such payments pursuant to § 506(b) of the Bankruptcy Code or as adequate protection

payments pursuant to §§ 361 and 363 of the Bankruptcy Code.  To the extent that the Court

determines in a final and non-appealable order that Lender was not entitled to payment of fees

and/or expenses pursuant to §§ 363 or 506(b) of the Bankruptcy Code, or not otherwise entitled

to adequate protection payments under §§ 361 and 363 of the Bankruptcy Code, then the amount

of such payments shall be subject to partial or total (as the case may be) reapplication to

principal or disgorgement, as the Court may determine.

      7.  Subject to paragraphs 4-5 above, the Replacement Liens granted to Lender pursuant

to this Order shall be prior and senior to all liens and encumbrances of (a) all other secured

creditors in and to such property granted, or arising, subsequent to the date of this Order

(including, without limitation, liens and security interests, if any, granted in favor of any federal,

state, municipal or other governmental unit, commission, board or court for any liability of the

Debtors other than taxes); (b) any intercompany claim of any Debtor or subsidiary or affiliate of

any Debtor; and (c) any security interest or lien that is avoided or otherwise preserved for the

benefit of any Debtor's estate pursuant to § 551 of the Bankruptcy Code; provided, however, that

the Replacement Liens granted to Lender pursuant to this Order shall not attach to any claims for

relief under chapter 5 of the Bankruptcy Code or the proceeds thereof.  The Replacement Liens

granted pursuant to this Interim Order shall constitute valid and duly perfected security interests

and liens, and Lender shall not be required to file or serve financing statements, notices of lien or

similar instruments which otherwise may be required under federal or state law in any

jurisdiction, or take any action, including taking possession, to validate and perfect such security

interests and liens; and the failure by the Debtors to execute any documentation relating to the

Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement

Liens.  If, however, Lender, in its sole discretion, shall determine to file any such financing

statements, notices of lien or similar instruments, or to otherwise confirm perfection of such

Replacement Liens, the Debtors are directed to cooperate with and assist in such process, the

stay imposed by § 362(a) of the Bankruptcy Code hereby is lifted to allow the filing and

recording of a certified copy of this Final Order or any such financing statements, notices of lien

or similar instructions, and all such documents shall be deemed to have been filed or recorded at

the time and date of this Interim Order.

   8.  Anything in this Interim Order to the contrary notwithstanding, and without limiting

the generality of the provisions of paragraph 2 herein, the Debtors shall be prohibited from using

Cash Collateral absent further order of this Court upon Lender having first notified the Debtors

and any statutory committee(s) in writing that an Event Of Default has occurred and is

continuing.  For purposes of this Interim Order, an "Event Of Default" shall occur if (a) the

Debtors fail to perform any of their obligations in accordance with the terms of this Interim

Order, including, without limitation, the Debtors' failure to use Cash Collateral in compliance

with the Budget, (b) any representation or warranty made by the Debtors under this Interim

Order or any pleading, certificate, report or financial statement delivered to Lender in these

Chapter 11 Cases proves to have been false or misleading in any material respect as of the time

when made or given (including by omission of material information necessary to make such

representation, warranty or statement not misleading), (c) the appointment of a Chapter 11

trustee or examiner with duties in addition to those set forth in §§ 1106(a)(3) and (a)(4) of the

Bankruptcy Code, (d) one or more of the Debtors' Chapter 11 Cases are converted to cases under

Chapter 7, (e) the Debtors shall fail to furnish to Lender the final reporting required under

paragraph 11 below, or (f) the Debtors shall fail to provide Lender with the access provided for

under paragraph 12 below; provided, however, that to the extent the alleged event of default is a

payment default or otherwise susceptible to cure, Lender shall provide the Debtors with written

notice thereof and five (5) business days' opportunity to cure such default. Upon termination of

the Debtors' right to use Cash Collateral pursuant to the terms of this Interim Order, nothing in

this Interim Order shall be deemed to waive the right of the Debtors or any successor thereto, to

bring a motion requesting that this Court authorize the use of Cash Collateral over the objection

of Lender or any parties' rights to contest any such motion.

9.   The Debtors are authorized to perform all acts that are deemed reasonably

necessary by Lender to effectuate the terms and conditions of this Order.

10.   Any stay, modification, reversal or vacation of this Interim Order shall not affect

the validity of any obligation of the Debtors to Lender incurred pursuant to this Interim Order.

Notwithstanding any such stay, modification, reversal or vacation, all use of Cash Collateral and

all obligations incurred by the Debtors pursuant hereto prior to the effective date of such stay,

modification, reversal or vacation, shall be governed in all respects by the original provisions

hereof and Lender shall be entitled to all the rights, privileges and benefits, including without

limitation, the Replacement Lien and Lender Superpriority Claims granted herein.

11.   The Debtors shall provide Lender with all reports as required by the Pre-Petition

Loan Agreement.  In addition, the Debtors shall provide Lender with: (a) updated rolling 13

week cash receipts and disbursements budgets in the form of the Budget, delivered on the fourth

Friday following the Filing Date and every fourth Friday thereafter; (b) a weekly report

comparing actual results to budgeted amounts for all categories appearing on the Budget, to be

delivered weekly in arrears; (c) on a monthly basis an accounts receivable aging report setting

forth the amount due and owing under each account receivable included in the Pre-Petition

Collateral and the Replacement Liens and (d) on a weekly basis an accounts payable aging report

setting forth the amount due and owing under each account payable incurred from and after the

Filing Date.

12.   The Debtors should also provide Lender (or any authorized representative thereof)

with reasonable access during normal business hours to all documentation, places of business,

officers, consultants and employees of the Debtors, all without material disruption to the

Debtors' business operations.

13.   The provisions of this Interim Order and any actions taken pursuant hereto shall

survive entry of any order which may be entered (a) confirming any plan of reorganization in

any of the Chapter 11 Cases, (b) converting any of the Chapter 11 Cases to a Chapter 7 case, or

(c) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Order as well as

the Lender Superpriority Claims and Replacement Lien granted pursuant to this Order shall

continue in full force and effect notwithstanding the entry of such order, and such Lender

Superpriority Claims and Replacement Lien shall maintain their priority as provided by this

Interim Order.

14.   The Debtors' stipulations contained in paragraphs C(i)-(iv) hereof shall be

binding upon all parties in interest, including but not limited to the Debtors and any statutory

committee, unless (a) a party in interest with standing (including the Debtors) in the Debtors'

Chapter 11 Cases or otherwise (including any statutory committee) has timely filed an adversary

proceeding or contested matter no later than the first date that is at least sixty (60) days from

entry of this Interim Order (unless such deadline is extended by written consent of Lender or by

order of this Court) (the "Challenge Period") asserting any claims or causes of action against

Lender that are related to, defenses to or challenges to either the validity, enforceability, extent or priority of the Pre-Petition Obligations or Lender's security interest and liens on the Pre-Petition Collateral in respect thereof, and (b) the Court rules (whether prior to or after such period) in favor of the plaintiff in any such adversary proceeding or contested matter timely filed within such period. Except to the extent asserted in an adversary proceeding timely filed during the Challenge Period, upon the expiration of such applicable Challenge Period, to the extent not otherwise waived or barred: (A) any and all such challenges and objections by any party (including, without limitation, any statutory committee, any Chapter 11 trustee, and/or any examiner appointed in these Chapter 11 Cases, and any Chapter 7 trustee and/or examiner appointed in any successor case), shall be deemed to be forever waived and barred; (B) all of the Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity of Lender's claims, liens, and interests, of any nature, under the Pre-Petition Loan Documents, respectively, or otherwise incorporated or set forth in this Interim Order, shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in these Chapter 11 Cases; and (C) without further order of the Court, the Pre-Petition Obligations shall be allowed as fully secured claims within the meaning of § 506 of the Bankruptcy Code for all purposes in connection with these Chapter 11 Cases and any successor cases. Upon a successful challenge brought pursuant to this paragraph, the Court may fashion any appropriate remedy.

15.  If Lender believes that one or more of the Debtors has used its Cash Collateral in a manner not consistent with this Interim Order, or fails to provide Lender with financial information as requested or with the access as provided above, Lender shall be permitted to seek relief, including, without limitation, termination of the Debtors' use of its Cash Collateral, on an

emergency or expedited basis on not less than 3 days' notice to the Debtors, the United States

Trustee, and any statutory committee(s).

16. The Debtors shall not (a) sell, transfer, lease, encumber or otherwise dispose of

any portion of the Pre-Petition Collateral other than in the ordinary course of business without

the prior written consent of Lender or order of this Court (and no such consent shall be implied,

from any other action, inaction or acquiescence by Lender, or from any order of this Court).

17. Nothing contained in the Interim Order or this Interim Order shall constitute a

waiver by Lender of its right to seek other or additional adequate protection, or other or

additional relief from the Court as the circumstances may dictate, including, but not limited to,

the right to seek additional adequate protection, relief from the automatic stay, dismissal or

conversion of the Chapter 11 Cases, or the appointment of a trustee or an examiner.

18. Except as explicitly provided for herein, this Interim Order does not create any

rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or

incidental beneficiary.

19. Upon entry of the Final Order, to the extent such relief is granted, no costs or

expenses of administration which have been or may be incurred in the Chapter 11 Cases at any

time shall be charged against Lender, or any of its claims or the Pre-Petition Collateral, pursuant

to § 105 or § 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of

Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by

Lender.

20. Lender shall not be subject to the equitable doctrine of "marshaling" or any other

similar doctrine with respect to any of the Pre-petition Collateral.

21. The Final Hearing to consider entry of the Final Order and final approval of the

Debtors' use of Lender's Cash Collateral is scheduled for _____ __, 2014 at __:00 __.m. before

the Honorable Wendy L. Hagenau, United States Bankruptcy Judge.  On or before June __,

2014, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the

entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with

copies of this Interim Order and the Motion, on: (a) the parties having been given notice of the

Interim Hearing; (b) any party which has filed prior to such date a request for notices with this

Court; (c)  counsel for any statutory committee, if appointed by such date; (d) the Internal

Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the

entry of the proposed Final Order shall file written objections with the Clerk of the Court no later

than on _____ __, 2014 at 4:00 p.m. (ET), which objections shall be served so as to be

received on or before such date by: (i) counsel to the Debtors, Theodore N. Stapleton, Suite 100-

B, 2802 Paces Ferry Road, Atlanta, Georgia, 30339; (ii) counsel to Lender, Jesse H. Austin, III,

Esq., King & Spalding, LLP, 1180 Peachtree Street, Atlanta, GA 30309-3521;  and (c) the Office

of the United States Trustee, 362 Richard Russell Federal Building, 75 Spring Street, S.W.,

Atlanta, Georgia.

     23.  This Interim Order shall constitute findings of fact and conclusions of law pursuant

to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Filing

Date immediately upon execution thereof.

     24.  The Court has and will retain jurisdiction to enforce this Interim Order according

to its terms.

**END OF DOCUMENT**

**Prepared and presented by:**
THEODORE N. STAPLETON, PC

 /s/ Theodore N. Stapleton
Theodore N. Stapleton

Georgia Bar No. 675850
Proposed Attorneys for Anesthesia Healthcare Partners, Inc.

Suite 100-B
2802 Paces Ferry Road
Atlanta, Georgia, 30339
Telephone: (770) 436-3334
tstaple@tstaple.com

**<u>DISTRIBUTION LIST</u>**

United States Trustee
362 Richard Russell Building
75 Spring Street, S.W.
Atlanta, Georgia 30303

Jesse H. Austin, III, Esq.
King & Spalding, LLP
1180 Peachtree Street
Atlanta, GA 30309-3521

Theodore N. Stapleton
Suite 100-B
2802 Paces Ferry Road
Atlanta, Georgia, 30339

**EXHIBIT "A" FOLLOWS**