**IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | **Case No. 14-59631** |
| **ANESTHESIA HEALTHCARE** | : | |
| **PARTNERS, INC.,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

---

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | **Case No.  14-59632** |
| **AHP ASSOCIATES OF TEXAS, P.A.,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

---

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | **Case No. 14-59633** |
| **AHP OF CENTRAL GEORGIA, P.C.,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

---

| | | |
|---|---|---|
| **IN RE:** | : | |
| | : | **Case No.  14-59634** |
| **AHP OF ILLINOIS, INC.,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

---

| | | |
|---|---|---|
| | : | |
| **IN RE:** | : | |
| | : | **Case No.  14-59635** |
| **AHP OF NORTH CAROLINA, INC.,** | : | |
| | : | **Chapter 11** |
| Debtor. | : | |

---

| | | |
|---|---|---|
| | : | |
| **IN RE:** | : | |
| | : | **Case No.  14-59636** |
| **AHP OF NORTHWESTERN** | : | |

1

| | | |
|---|---|---|
| **LOUISIANA, LLC,** | : | |
| | : | **Chapter 11** |
| **Debtor.** | : | |

| | | |
|---|---|---|
| | : | |
| **IN RE:** | : | |
| | : | **Case No.  14-59637** |
| **AHPM OF GEORGIA, INC.,** | : | |
| | : | **Chapter 11** |
| **Debtor.** | : | |

| | | |
|---|---|---|
| | : | |
| **IN RE:** | : | |
| | : | **Case No.  14-59639** |
| **ANESTHESIA HEALTHCARE** | : | |
| **PARTNERSOF FLORIDA, INC,.INC.,** | : | |
| | : | **Chapter 11** |
| **Debtor.** | : | |

| | | |
|---|---|---|
| | : | |
| **IN RE:** | : | |
| | : | **Case No.  14-59640** |
| **HBL ANESTHESIA SERVICE, LLC,** | : | |
| | : | **Chapter 11** |
| **Debtor.** | : | |

| | | |
|---|---|---|
| | : | |
| **IN RE:** | : | |
| | : | **Case No.  14-59641** |
| **MEDFINANCIAL, LLC,** | : | |
| | : | **Chapter 11** |
| **Debtor.** | : | |

| | | |
|---|---|---|
| | : | |
| **ANESTHESIA HEALTHCARE** | : | |
| **PARTNERS, INC.,** | : | |
| | : | **CONTESTED MATTER** |
| **Movant,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SUNTRUST BANK, in its capacity as** | : | |
| **administrative agent for lenders,** | : | |
| | : | |

2

**Respondent.**                          **:**
_____  **:**

## DEBTOR'S EMERGENCY MOTION TO OBTAIN
## POST-PETITION FINANCING

COMES NOW Anesthesia Healthcare Partners, Inc., AHPM of Georgia, Inc., AHP of

Central Georgia, P.C., AHP of Northwestern Louisiana, LLC, AHP of North Carolina,

Anesthesia Healthcare Partners of Florida, Inc., AHP Associates of Texas, P.A.,  MedFinancial,

LLC, AHP of Illinois, Inc., and HBL Anesthesia Service, LLC (collectively, the "Debtors" and

each individually, a "Debtor") and moves this Court pursuant to 11 U.S.C. §§105, 361, 362,

364(c)(1) ,(2) and (3), 363(d) and 507 and  Fed. R. Bankr. P. 4001, to authorize AHP, to incur

post-petition financing and grant liens (including priming liens) on the Debtor's accounts

receivable (the "Collateral") to secure the post-petition financing.  The Debtor requests approval

of the post-petition financing and for authority to provide adequate protection to SunTrust Bank

in its capacity as administrative agent for the Lender (the "Administrative Agent")("Lender"),

the Debtor's pre-petition first-lien lender.  The Debtor also requests that Lender and the post-

petition lender, Sean M. Lynch, CEO and 100% shareholder/member of Debtors ("Lynch" or

"Post-Petition Lender")  be granted relief from the automatic stay, to evidence, confirm, validate

or perfect, or to insure the contemplated priority of, their liens.  In support thereof, Debtor

respectfully shows as follows:

### I.  FACTUAL HISTORY

1.

On May 15, 2014 (the "Petition Date"), Debtors filed voluntary Petitions for relief under

Chapter 11 of the Bankruptcy Code.  The Debtor is authorized to operate its business as a Debtor-

3

in-Possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2.

This Court has jurisdiction to consider this *Motion* pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.

Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

***Compliance with Rule 4001(c)***

4.

The Debtor has agreed to the terms of a post-petition financing arrangement the material terms of which as set forth in the Term Sheet attached as Exhibit A (the "Term Sheet") with Sean M. Lynch pursuant to which the Post-petition Lender will grant the Debtor a credit line of up to $100,000.00 on an interim and final basis, which amount is necessary to maintain the Debtor's on-going operations and preserve its going concern value.  Specifically, the post-petition financing is required to fund the Debtor's payroll to employees and Debtors' independent contractors due Thursday, May 22, 2014.  In exchange, the Debtor will:

a)  seek entry of an order in form and substance acceptable to the Post-petition Lender (the "Final Order");

b)  grant to the Post-petition Lender a priming lien (the "Priming Lien") pursuant to 11 U.S.C. §364(d)(1) on the Debtor's accounts receivable that constitutes collateral for the pre-petition loan serviced by Lender dated as of August 28, 2009;

c)  grant to the Post-petition Lender a first priority lien pursuant to 11 U.S.C. §364(c)(2) on the Property;

4

d)  seek a determination that pursuant to 11 U.S.C. §364(c)(1), that all amounts advanced post-petition shall constitute a super-priority administrative expense claim having priority over all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code;

e)  request that the Final Order, as applicable, constitute conclusive evidence of the validity, perfection, and priority of the liens provided for therein;

f)  upon entry of the Final Order, be bound by and authorized and directed to comply with the Term Sheet, to borrow funds thereunder, and to take all actions necessary to comply with the Term Sheet and the Final Order;

g)  upon entry of the Final Order, enter into the Final DIP Agreement (as defined in the Term Sheet) and the other documents and instruments required thereby, borrow funds thereunder, and take all actions necessary to comply with this Final DIP Agreement and any Final Order;

h)  grant super-priority administrative claim status to the Post-petition Lender's claim;

i)  grant adequate protection to the Pre-petition First Lien Lender on the terms set forth in the Term Sheet, and the Final Order, as applicable.

### *Debtors' Business*

5.

This Motion is supported by the Declaration of Sean M. Lynch in Support of First Day Motions. [Doc No. 13]

6.

Each of the Debtors contracts with health care entities such as hospitals, private clinics and ambulatory service centers in their respective geographical areas to provide anesthesia management and/or support services.

7.

The Debtors' sole principal is Mr. Sean M. Lynch.  Mr. Lynch has over 40 years of experience operating anesthesia management or holding related health care positions. Mr. Lynch owns 100% of each Debtor and is the CEO or managing member of each of the Debtors.

8.

In total, the Debtors have approximately 38 independent contractor providers and provide services for approximately 14 healthcare facilities.

9.

Debtor's healthcare professionals are compensated as independent contractors under Physician Independent Contractor Professional Services Agreements and Certified Registered Nurse Anesthetists Professional Services Agreements.  (the "Independent Contractor Agreements")

10.

The Debtor's Employees are compensated on a semi-monthly basis payable on the 15th and the last day of the month.  Debtors' MD independent contractors are paid monthly on the 10th of the month and the CRNA independent contractors are paid semi- monthly on the 7th and 22nd of the month.  Debtors' next payroll is due Friday, May 30th, 2014, and covers the period from May 16th, 2014 through May 31, 2014 (the " Employee Payroll Period"). The net payroll due on May 30, 2014, totals approximately $74,939.24. The stipend due to CRNA Independent Contractors on

May 22nd totals $176,006.28 and the stipend due to MD Independent Contractors on June 10

totals $316,901.26. (the "Independent Contractor Payment Period") The Independent Contractor

Payment Period includes a pre-petition period during which payments accrued.

11.

The assets of the Debtor have been pledged to SunTrust Bank, in its capacity as

administrative agent for the Lender.  The Debtors estimate that the total outstanding principal

loan balances as of the Petition Date owing to Lender on its Term Loans total $4,500.000.00, and

on its Revolving Loans total $4,000,000.00 (hereinafter the "Lender Debt"), in addition to forced

penalties and fees imposed by SunTrust in excess of $100,000.00. Lender has asserted liens upon

and security interests (hereinafter the "Lender Lien") against the assets of the Debtors, including

accounts receivable owned by the Debtors, and the proceeds thereof, and against Debtors'

inventory, equipment and fixtures (hereinafter the "Collateral").

12.

The Post-petition Lender and the Debtor have agreed to a post-petition line of credit in the

amount of up to $100,000.

### *The Debtor's Financing Needs*

13.

The Debtor cannot fund the Independent Contractor Payments due May 22, 2014 to its

healthcare professionals without the short term loan offered by the Debtor's CEO.  The Debtors'

business depends exclusively upon the revenue generated by its healthcare professionals.  Absent

payment to their healthcare professionals,  Debtors will lose the revenues generated by the

Independent Contractor Agreements.  Attached as Exhibit "B" is the Debtors' consolidated 13

week budget with projections based upon approval of the D-I-P financing and attached as Exhibit

"C" is the Debtors' consolidated 13 week budget with projections based upon the loss of revenues

resulting from the failure to fund payments due to Debtors' healthcare professionals on May 22,

2014. The net result is a loss of approximately $300,000.00 in revenues over the 13 week period.

9.

The Debtor is not able to receive more favorable terms than those set forth in

the Term Sheet.

10.

The Debtors and Mr. Lynch have attempted to contact numerous other lenders and no

lender would provide an alternative proposal nor does Mr. Lynch believe any lender would

provide post-petition financing on a junior basis.

11.

Lender is currently the Pre-petition First Lien Lender asserting a first-priority

secured claim of no less than $8,500,000.00 against the Debtors. The Pre-petition First Lien

Lender's claim is secured by a fully perfected lien on all the Debtors' assets.

12.

The Debtor needs the post-petition financing to keep the Debtors' Independent Contractor

Agreements viable and maintain revenues. The Debtor has determined that this proposed post-

petition financing is necessary to maintain the Debtor's business relationships, to meet its

working capital needs, and fund payments to Lender.

13.

8

To ensure the Debtor's business operations are not interrupted, and to ensure that this Chapter 11 case proceeds optimally, the Debtor has concluded that obtaining post-petition financing is necessary and in the best interest of the Debtor and its estate.

14.

Without the D-I-P financing, the Debtors will lose significant revenues to the detriment of all creditors and the estate.

***The New DIP Loan Proposal***

15.

The Debtor proposes to borrow up to $100,000 on an interim and final basis from the Post-petition Lender secured by the Debtor's accounts receivable.

16.

The post-petition financing will be made according to the terms contained in the Term Sheet and the Final Order.

17.

The terms proposed by Lynch are within the range of market terms for other debtor-in-possession loans in other bankruptcy cases.

18.

The material terms of the Facility are set forth on the Term Sheet.  Nonetheless, the Debtor specifically notes the following provisions:

i)  Pricing. The effective interest rate for all Post-petition advances is to accrue at six percent (6%) per annum.

ii)  DIP Financing-  The Post-petition lender shall provide the Debtor with a credit facility in an

9

aggregate amount of $100,000 as a revolving line of credit. Each advance will be repaid within 14 days of advance; provided all advances are repaid by August 15, 2014. . (the "Commitment Amount")

iii)  Maturity Date. The maturity date will be August 15, 2014.

### 19.

The Post-petition Lender is extending the financing to the Debtor, and the Pre-petition First Lien Lender is permitting the use of its cash collateral, in good faith, and is entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code's proposal is reasonable under the circumstances.

### 20.

The Debtor has requested that, pursuant to the terms set forth in the Term Sheet, the Post-petition Lender make loans and advances and provide other financial accommodations to the Debtor.  The Post-petition Lender is willing to make such loans and advances and provide such other financial accommodations to the Debtor in accordance with the terms of the Term Sheet and subject to (i) the entry of the Final Order, and such other relief as the Post-petition Lender believes appropriate including, without limitation, termination of the automatic stay.

### 21.

The Post-petition Lender's security interests, liens, encumbrances, claims, super-priority administrative expense claims and other protections granted pursuant to the such documents will not be affected by any subsequent reversal, modification or amendment of the Interim Order or Final Order, as applicable, or any other order, as provided in section 364(e) of the Bankruptcy Code.

22.

It is not anticipated that the Post-petition Lender's new lien will affect any parties' security interest other than the Pre-petition First Lien Lender, as no junior lienholders appear in the UCC records of the respective states in which Debtors operate.

## II.  APPLICABLE LAW ON POST-PETITION FINANCING

The Bankruptcy Code authorizes a debtor in possession to obtain financing Post-petition pursuant to § 364.  This section permits the Court, after notice and hearing, to authorize a debtor to obtain credit or the incurring of debt secured by a lien on property of the estate, if the debtor is unable to obtain unsecured credit allowable as an administrative expense pursuant to §503(b)(1). In this regard § 364 provides:

(c) If the trustee is unable to obtain unsecured credit allowable under Section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or incurring of debt –

(2) secured by a lien on property of the estate that is not otherwise subject to a lien;

The Debtor has not been able to and believes it is impractical for the Debtor to locate financing in exchange for administrative claims. As a result, the Debtor negotiated the terms of the post-petition financing secured by a lien on the Debtor's Property. *In re Snowshoe Company*, 789 F.2d 1085, 1088 (4th Cir. 1986) (the trustee contacted other financial institutions in the immediate geographic areas and was unsuccessful in obtaining unsecured credit); *In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 630-31 (Bankr. S.D.N.Y. 1992) (unsuccessful attempt to secure financing from other sources justified senior priority loan under Bankruptcy Code

11

§364); *In re Ames Dept. Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (that the debtors

had contacted four lenders satisfied the requirements of Bankruptcy Code §364 that debtors were

unable to obtain comparable financing on an unsecured basis).

In these circumstances, the Bankruptcy Code imposes no duty to seek credit from

every possible lender before concluding that such credit is unavailable. *In re Snowshow*

*Company,* 789 F.2d at 1088. There are few lenders likely to be able or willing to extend the

necessary credit to the Debtor, it would be unrealistic and unnecessary to require the debtor

to conduct an exhaustive search for financing. *See In re Sky Valley, Inc.*, 100 B.R. 107, 113

(Bankr. N.D. Ga. 1988).

In the months leading up to the Petition Date, the Debtors investigated proposals for

financing and sale of the Property.  After appropriate investigation and analysis, including careful

and time-consuming deliberations among the Debtors' restructuring counsel and advisors, the

Debtors reasonably concluded that no other source of funding is available to the Debtor.

Accordingly, the Debtors have concluded in their business judgment that the proposed D-I-P

financing provided by the Post-petition Lender is the most favorable for the estate.  Consequently,

the Debtors' efforts in this regard satisfy the statutory requirements of § 364(c).

The proposed terms of the D-I-P financing are reasonable. The purpose of the D-I-P

financing is to enable the Debtor to fund payments to its healthcare professionals on May 22,

2014 and maintain the stability of its operations during this Chapter11 case. See *In re First South*

*Savings Assoc.,* 820 F.2d 700, 710-15 (5th Cir., 1987); *In re Tenney Village Co.*, 104 B.R. 562,

568-69 (Bankr. D.N.H. 1989).  With access to the D-I-P financing, which would include

immediate access of up to $100,000 on an interim and final basis, the Debtor is hopeful that it can

maintain the stability of its operations during the remainder of this Chapter 11 case.

As described above, after appropriate investigation and analysis, the Debtor has concluded that pursuing the D-I-P financing with Post-petition Lender is the best alternative available under the circumstances. Bankruptcy courts routinely defer to the Debtor's business judgment on most business decisions, including the decision to borrow money. See *Group of Institutional Investors vs. Chicago Mil. St. & Pac. Ry.,* 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.,* 47 B.R. 444, 449 (D. Colo., 1985) (business judgment should be left to the board room and not to the bankruptcy court); *In re Lifeguard Industries, Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio, 1983). More exacting scrutiny would slow the administration of the Debtor's estate and increase the cost, interfere with the Bankruptcy Code's provisions for private control of administration of the estates, and threaten the Court's ability to control a case impartially. *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1311 (5th Cir. 1985).

In general, a bankruptcy court should defer to a debtor's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assoc.,* 14 B.R. 507, 511-13 (Bankr. D. Utah, 1981) (courts generally will not second guess a debtor's business decision when those decisions involve a business judgment made in good faith, upon a reasonable basis, and within the scope of authority granted under the Bankruptcy Code) *Curlew Valley*, 114 B.R. at 513-14.

The Debtors has exercised sound business judgment seeking advice from their restructuring advisors in determining that pursuing the D-I-P financing is appropriate, and have satisfied the legal prerequisites to borrow under the D-I-P financing.  The terms of the D-I-P

financing are fair and reasonable and are in the best interest of their estates. Accordingly, under

the Bankruptcy Code, §364(c), the Debtor should be granted authority to enter into the D-I-P

financing and to borrow funds from the Post-petition Lender on the basis described above.

Debtors shall file their plans of reorganization, disclosure statements and set hearings

thereon seeking approval of their disclosure statements and confirmation of their plans of

reorganization within the requirements set forth in 11 U.S.C. 1121.

### III.  ADEQUATE PROTECTION

The Debtor intends to provide the Pre-petition First Lien Lender a replacement lien on all

collateral it had pre-petition.  The Pre-petition First Lien Lender is entitled, pursuant to sections

361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of its interest in the

Property equal in amount to the aggregate diminution in value of its interest in the Property,

including without limitation, any such diminution resulting from (i) the sale, lease or use by the

Debtor of the Property, and (ii) the imposition of the automatic stay pursuant to section 362 of the

Bankruptcy Code (the "Adequate Protection Claim").  As adequate protection, the Pre-petition

First Lien Agent and the Pre-petition First Lien Lender will be granted the following:

(a)  Adequate Protection Liens. The Pre-petition First Lien Lender will be granted (effective and

perfected upon the date of the Final Order and without the necessity of the execution by the

Debtor of mortgages, security agreements, pledge agreements, financing statements or other

agreements) replacement security interests in and liens upon all of the Property, subject and

subordinate only to (i) the security interests and liens granted to the Post-petition Lender in the

Final Order and any liens on the Property to which such liens so granted to the Post-petition

Lender are junior.

14

(b)  Adequate Protection Claim. The Adequate Protection Claim of the Pre-petition First Lien
Lender shall have Superpriority (as defined in the Term Sheet) status, subject only to the
Superpriority status of the obligations under the D-I-P financing.

(c)  506(c).  Upon entry of the Final Order approving this Term Sheet and the D-I-P financing, no
costs or expenses of administration which have been or may be incurred in the Case at any time
shall be charged against the Pre-petition First Lien Lender or the Post-petition Lender, their
claims, or the Pre-petition First Lien Lender's or the Post-petition Lender's Collateral, pursuant to
sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of
the Post-petition Lender or the Pre-petition First Lien Lender, as applicable, and no such consent
shall be implied from any other action, inaction, or acquiescence by the Post-petition Lender or
the Pre-petition First Lien Lender.  Under section 361 of the Bankruptcy Code, adequate
protection may be provided by granting a lienholder an additional or replacement lien to the
extent that the usage of the Cash Collateral results in a decrease in the value of such entity's
interest in such property.  Pursuant to Sections 361, 363(e) and 364(d)(1) of the Bankruptcy
Code, the Pre-petition First Lien Lender may have adequate protection of their respective
interests in the Property equal in amount to the aggregate diminution in value of their respective
interests in the Property, including without limitation, any such diminution resulting from the
sale, lease or use by the Debtor of the Property. As discussed above, the Final Order provides for
replacement liens, adequate protection claims and a Section 506 waiver to protect the Pre-petition
First Lien Lender.

## IV. RELIEF REQUESTED

The Debtors' respectfully requests this Court:

15

1) Grant Debtors' request for authority to enter into the D-I-P financing on an interim and final basis and be bound by the Term Sheet, borrow funds thereunder and execute and comply with all documents required thereby;

2) Grant authority for the Debtor to enter into all documentation necessary to effectuate the terms set forth in the Term Sheet, borrow funds thereunder and execute and comply with all documents required thereby;

3)  Grant adequate protection;

4)  Modify the automatic stay as provided in the Final Order as necessary to effectuate the D-I-P financing; and

5)  Grant such other relief as is proper.

　　　　Respectfully submitted this 21st day of May, 2014.

　　　　　　　　　　　　THEODORE N. STAPLETON, P.C.


　　　　　　　　　By:   /s/   Theodore N. Stapleton
　　　　　　　　　　　　Theodore N. Stapleton
　　　　　　　　　　　　Georgia Bar No. 675850
　　　　　　　　　　　　Proposed Attorneys for Debtors
Suite 100-B
2802 Paces Ferry Road, NW
Atlanta, Georgia 30339
(770) 436-3334
tstaple@tstaple.com




**<u>CERTIFICATE OF SERVICE</u>**

　　　I certify that on the date indicated below I caused to be served a true and correct copy of

the foregoing documents upon the party listed below via United States mail, postage prepaid, in

a properly addressed envelope to assure deliver to:

> Office of the U.S. Trustee
> 362 Richard Russell Building
> 75 Spring Street  SW
> Atlanta, GA 30303
>
> Jesse H. Austin, III, Esq.
> King & Spalding, LLP
> 1180 Peachtree Street
> Atlanta, GA 30309-3521

This 21st day of May, 2014.

  /s/  Theodore N. Stapleton   

Theodore N. Stapleton

## TERMS OF SENIOR SECURED SUPER-PRIORITY
## DEBTOR IN POSSESSION FINANCING FACILITY

Set forth below are the material terms of the debtor in possession credit facility to be made available by Sean M. Lynch, (the "Post-petition Lender") to Anesthesia Healthcare Partners Inc., and related Debtors.  This Term Sheet is intended to enable the Debtor to borrow on an emergency basis, on the terms and subject to the conditions in this term sheet (the Term Sheet) up to the interim amount and to serve, as applicable, as the principal terms and conditions of the final DIP Agreement.  The Term Sheet does not contain all the terms and conditions and other provisions of the final DIP Agreement. Until approved by the Court , this Term Sheet does not constitute a commitment on behalf of the Post-petition Lender to provide the Facility or any other financing.

1.  Post-petition Lender-  Sean M. Lynch

2.  Debtors-  Anesthesia Healthcare Partners, Inc., AHPM of Georgia, Inc., AHP of Central Georgia, P.C., AHP of Northwestern Louisiana, LLC, AHP of North Carolina, Anesthesia Healthcare Partners of Florida, Inc., AHP Associates of Texas, P.A., MedFinancial, LLC, AHP of Illinois, Inc., and HBL Anesthesia Service, LLC (collectively, the "Debtors" and each individually, a "Debtor")

3.  DIP Financing-  The Post-petition lender shall provide the Debtor with a credit facility in an aggregate amount of $100,000 as a revolving line of credit.  Each advance will be repaid within 14 days of advance; provided all advances are repaid by August 15, 2014. (the "Commitment Amount")  Subject to all the terms and conditions hereof, upon entry of an order by the Court approving the terms set forth herein and associated documentation, executed by the Debtor, approved by the Court and following entry of a Final Order approving the financing which is not subject to any stay funding shall be made immediately to fund the May 22, 2014 independent contractor payments.

4.  Maturity Date-  Unless accelerated as a result of an Event of Default, the DIP Financing will be immediately due and payable on August 15th 2014 (such date being the "Maturity Date")

5.  Purpose and use of proceeds- The DIP Financing is intended to enable the Debtor to fund the May 22, 2014 independent contractor payments, on the term and conditions in this Term Sheet, up to the amount of the Commitment Amount in order to pay anesthesia providers vital to the business of the Debtor.

6.  Interest- The principal amount of the loans outstanding under the DIP Financing shall bear interest at a rate of 6% per annum.

7.   Interest Payments-  Interest shall be payable at Maturity

8.   Closing Fee- No closing fees will be charged by lender

9.   Security- Accounts Receivable of Debtor. ("Collateral")

10.  Priority-  Pursuant to section 364 (c) (1) of the Bankruptcy Code, all amounts owing by the Debtor under the DIP Financing in respect thereof at all times will constitute allowed super-priority administrative expense claims in the Case, having priority over all administrative expenses of the kind specified in sections 503 (b) and 507 (b) of the Bankruptcy Code.

11.  Post-petition Lien Perfection-  The Order shall provide that it is sufficient and conclusive evidence of the validity, perfection, and priority of the Super Priority Liens without the necessity of filing or recording any financing statement which may otherwise be required under the law of any jurisdiction.

12.  Adequate Protection-  The Pre-Petition First Lien Lender is entitled, pursuant to sections 361, 363, and 364 of the Bankruptcy Code, to adequate protection of its interest in the Collateral, equal in amount to the aggregate diminution in value of its interest in the Property.  As adequate protection, the Pre-Petition First Lien Lender is entitled to the following:

   a.   The Pre-petition First Lien Lender will be granted replacement security interests in and liens upon all of the Collateral, subject and subordinate only to (i)  the security interests and liens granted to the Post-petition Lender, and  (ii)  the Carve-out.
   b.   The adequate protection claim of the Pre-Petition First Lien Lender shall have Super-priority status, subject only to the Super-priority status of the obligations of the DIP Financing.
   c.   506( c).  Upon approval of the DIP Financing no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the Pre-petition First Lien Lender, pursuant to sections 105 or 506( c) of the Bankruptcy Code, or otherwise, without prior written consent of the Pre-petition First Lien Lender.

13.   Affirmative Covenants-  Debtor covenants that it will deliver to the Post-petition Lender financial statements and other reporting reasonably requested by the Post-petition Lender.

14.  Events of Default-  The DIP Financing will terminate and all amounts owing thereunder will immediately be due if a chapter 11 trustee is appointed, the case is converted to a case under  chapter 7 of the Bankruptcy Code, or the case is dismissed.

 15. Governing Laws -  The Term Sheet, the DIP Financing and all documentation in connection with the DIP Financing shall be governed by the laws of the State of Georgia except as governed by the Bankruptcy Code.

**Anesthesia Healthcare Partners Inc.  13 week budget with DIP Financing**

| | First Three Days of Week Ending 5/23/2014 | Last Two Days of Week Ending 5/23/2014 | Week Ending 5/30/2014 | Week Ending 6/6/2014 | Week Ending 6/13/2014 | Week Ending 6/20/2014 | Week Ending 6/27/2014 | Week Ending 7/4/2014 | Week Ending 7/11/2014 | Week Ending 7/18/2014 | Week Ending 7/25/2014 | Week Ending 8/1/2014 | Week Ending 8/8/2014 | Week Ending 8/15/2014 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Patient Collections | 169,525.95 | 113,017.34 | 282,543.29 | 347,543.29 | 302,321.32 | 302,321.32 | 302,321.32 | 347,321.32 | 302,321.32 | 302,321.32 | 302,321.32 | 302,321.32 | 302,321.32 | 302,321.32 | 3,980,843.07 |
| Subsidy and Drug and Supply Income | | | | 51,398.00 | | | | 51,398.00 | | | | 51,398.00 | | | 154,194.00 |
| DIP Financing (Note 3) | 100,000.00 | | | | | | | | | | | | | | 100,000.00 |
| Total Revenue | 269,525.95 | 113,017.34 | 282,543.29 | 398,941.29 | 302,321.32 | 302,321.32 | 302,321.32 | 398,719.32 | 302,321.32 | 302,321.32 | 302,321.32 | 353,719.32 | 302,321.32 | 302,321.32 | 4,235,037.07 |
| **CRNA Providers** | | | | | | | | | | | | | | | |
| Total Providers CRNA Providers Expense | 204,867.14 | | | 204,867.14 | | 204,867.14 | | | 204,867.14 | | 204,867.14 | | 204,867.14 | | 1,229,202.84 |
| **MD Providers** | | | | | | | | | | | | | | | |
| Total MD Providers Expense | | | | | 343,088.75 | | | | 343,088.75 | | | | 343,088.75 | | 1,029,266.25 |
| Locum Expense | 10,000.00 | | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 130,000.00 |
| **Other Direct Cost for Sites** | | | | | | | | | | | | | | | |
| Billing Fees | | | | | | | 20,000.00 | | | | | | | | |
| Shipping Expense and Forms | | | 2,259.00 | | | | 2,259.00 | | | | 2,259.00 | | | | 6,777.00 |
| Drugs and Supplies | | | 33,054.00 | | | | 33,054.00 | | | | 33,054.00 | | | | 99,162.00 |
| Rent | | | | | 26,429.00 | | | | 26,429.00 | | | | | 26,429.00 | 79,287.00 |
| Total Other Direct Cost for Sites | - | | 35,313.00 | - | 26,429.00 | - | 55,313.00 | - | 26,429.00 | - | 35,313.00 | - | - | 26,429.00 | 205,226.00 |
| Total Sites Cost | 214,867.14 | | 45,313.00 | 214,867.14 | 379,517.75 | 214,867.14 | 65,313.00 | 10,000.00 | 584,384.89 | 10,000.00 | 250,180.14 | 10,000.00 | 557,955.89 | 36,429.00 | 2,593,695.09 |
| **Salaries and Wages Employees** | | | | | | | | | | | | | | | |
| **Total Salaries and Wage Expense** | | - | 109,678.56 | - | 47,178.56 | - | - | 109,678.56 | - | 47,178.56 | - | 109,678.56 | - | 47,178.56 | 470,571.36 |
| **Total Site and Employee Wages** | 214,867.14 | - | 154,991.56 | 214,867.14 | 426,696.31 | 214,867.14 | 65,313.00 | 119,678.56 | 584,384.89 | 57,178.56 | 250,180.14 | 119,678.56 | 557,955.89 | 83,607.56 | 3,064,266.45 |

Note
In week 3 money from insurance companies not worked by McKesson is part of the increase in collections of 65,000
In week 7 money from insurance companies not worked by McKesson is part of the increase in collections of another 45,000

Note 3
DIP Financing is needed to pay providers due on May 22nd.  Collections from Monday May 19 to Wednesday May 21
are not enough to pay the providers by the contract due date.  Not paying the providers by the contract due date will be
a detriment to the company.  Bank fees are also paid on the 20th of the month.  Without DIP Financing funds are not
available in time to pay providers.

**Anesthesia Healthcare Partners Inc.  13 week budget with DIP Financing**

| Overhead Expenses | Week Ending 5/23/2014 (First Three Days) | Week Ending 5/23/2014 (Last Two Days) | Week Ending 5/30/2014 | Week Ending 6/6/2014 | Week Ending 6/13/2014 | Week Ending 6/20/2014 | Week Ending 6/27/2014 | Week Ending 7/4/2014 | Week Ending 7/11/2014 | Week Ending 7/18/2014 | Week Ending 7/25/2014 | Week Ending 8/1/2014 | Week Ending 8/8/2014 | Week Ending 8/15/2014 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3077 & 3079 Rent | | | | 8,900.00 | | | 8,900.00 | | | | | 8,900.00 | | | 26,700.00 |
| 401K Match | | 606.00 | | 606.00 | 606.00 | | 606.00 | | | 606.00 | | | 606.00 | | 3,636.00 |
| ADP | | | 130.00 | 200.00 | | | 130.00 | | | 200.00 | 130.00 | | 200.00 | | 990.00 |
| American Express Corporate | | | 10,000.00 | | | | | | | | | 20,000.00 | | | 30,000.00 |
| AMEX Travel ins | | | | | 30.00 | | | | 30.00 | | | | | 30.00 | 90.00 |
| AT&T | | | | | 400.00 | | | | | 400.00 | | | | 400.00 | 1,200.00 |
| AT&T Mobility | | | | | 1,500.00 | | | | | 1,500.00 | | | | 1,500.00 | 4,500.00 |
| Bank Fees | 16,000.00 | | | | | | 16,000.00 | | | | 16,000.00 | | | | 48,000.00 |
| Beacon Info Systems | | | 1,500.00 | | | | 1,500.00 | | | | 1,500.00 | | | | 4,500.00 |
| Blue Grace Shipping | | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,600.00 |
| Century Link | | | | | | 155.00 | | | | | 155.00 | | | 155.00 | 465.00 |
| Cisco Capital | | | 4,400.00 | | | | 4,400.00 | | | | | 4,400.00 | | | 13,200.00 |
| Citadel Security | | | | | 120.00 | | | | | 120.00 | | | | 120.00 | 360.00 |
| Cobb EMC | | | | | 600.00 | | | | | 600.00 | | | | 600.00 | 1,800.00 |
| Cobb Water | | | | | | 75.00 | | | | | | 75.00 | | | 150.00 |
| Crescent Park | | | | | 683.72 | | | | | | 683.72 | | | 683.72 | 2,051.16 |
| Crystal Springs | | 180.00 | | | | 180.00 | | | | 180.00 | | | | | 540.00 |
| De Lage Landen | | | | 2,600.00 | | | | | 2,600.00 | | | | | 2,600.00 | 7,800.00 |
| Direct TV | | | 145.00 | | | | 145.00 | | | | | | 145.00 | | 435.00 |
| Employee Expense Checks | | 8,057.52 | | | | | 5,000.00 | | | | 5,000.00 | | | | 18,057.52 |
| G&S Rent | | 11,000.00 | 11,000.00 | | | | 11,000.00 | | | | | 11,000.00 | | | 44,000.00 |
| GA Power | | | | | 1,000.00 | | | | | 1,000.00 | | | | | 2,000.00 |
| Gas South | | | | | | 285.00 | | | | | 285.00 | | | 285.00 | 855.00 |
| GE Capital | | | 5,300.00 | | | | 5,300.00 | | | | | 5,300.00 | | | 15,900.00 |
| GE HealthCare | | | | | 4,000.00 | | | | 4,000.00 | | | | | 4,000.00 | 12,000.00 |
| Guardian | | | 1,332.35 | | | | | | 1,332.35 | | | | 1,332.35 | 1,332.35 | 5,329.40 |
| Imperial Premium Financing- Prof Liability | | | 13,066.27 | | | | 13,066.27 | | | | 13,066.27 | | | | 39,198.81 |
| Imperial Premium Malpractice Insurance | | | 17,321.82 | 4,109.26 | | | | | 4,109.26 | | | | 4,109.26 | | 29,649.60 |
| Iron Mountain | | | | | 363.48 | | | | | 363.48 | | | | 363.48 | 1,090.44 |
| IT Firm | | | | | | | 5,000.00 | | | | 5,000.00 | | | | 10,000.00 |
| Lincoln Life | | | | 584.70 | | | | 584.70 | | | | | 584.70 | | 1,754.10 |
| MD Solutions | | | 15,000.00 | | | | 15,000.00 | | | | | 15,000.00 | | | 45,000.00 |
| Medical Maintenance | | | 1,342.80 | | | | | | | | | | | | 1,342.80 |
| MedKinetics | | | | | 1,577.00 | | | | 1,577.00 | | | | 1,577.00 | | 4,731.00 |
| Medpoint | | | 1,362.00 | | | | | | | | | | | | 1,362.00 |
| Mills & Hoopes | | | | | | | 10,000.00 | | | | 10,000.00 | | | | 20,000.00 |
| Miscellaneous | | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 3,250.00 |
| NY Life | | | | 615.25 | | | | | 615.25 | | | | 615.25 | | 1,845.75 |
| Quality Technology | | | | | 3,400.00 | | | | 3,400.00 | | | | | 3,400.00 | 10,200.00 |
| Rodney Moore- lawn care | | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,300.00 |
| Scana Energy | | | | | | 700.00 | | | | | 700.00 | | 700.00 | | 2,100.00 |
| SOS | | 484.46 | | | 600.00 | | | | 600.00 | | | | 600.00 | | 2,284.46 |
| Sunbelt Office | | | 1,000.00 | | | | 1,000.00 | | | | | 1,000.00 | | | 3,000.00 |
| Sunbelt Printing | | | 1,360.00 | | | | 500.00 | | | | 500.00 | | | | 2,360.00 |
| SunTrust Interest | | | | | | 49,583.34 | | | | 49,583.34 | | | | 49,583.34 | 148,750.02 |
| Superior Answering Service | | | 72.00 | | | | 72.00 | | | | | 72.00 | | | 216.00 |
| Tax Distribution | | | 23,538.00 | | | | 23,538.00 | | | | | 23,538.00 | | | 70,614.00 |
| Ted Stapleton, Attorney | | | | | | | 10,000.00 | | | | 10,000.00 | | | | 20,000.00 |
| UHC | | | 15,000.00 | | | | 15,000.00 | | | | | 15,000.00 | | | 45,000.00 |
| Verizon Wireless | | | | | | 1,600.00 | | | | 1,600.00 | | | | 1,600.00 | 4,800.00 |
| Windstream | | | | | 6,500.00 | | | | 6,500.00 | | | | | 6,500.00 | 19,500.00 |
| DIP Financing Repayment | | | | | | | | | | | | | | 101,500.00 | 101,500.00 |
| **Total Overhead Expenses** | 16,000.00 | 20,877.98 | 74,642.89 | 64,842.56 | 72,707.54 | 4,451.00 | 89,756.27 | 60,733.30 | 17,066.26 | 63,946.54 | 110,011.27 | 57,667.05 | 10,102.51 | 175,202.89 | 822,008.06 |
| Net Cash After Expense | 38,658.81 | 92,139.36 | 52,908.84 | 119,231.59 | (197,082.53) | 83,003.18 | 147,252.05 | 218,307.46 | (299,129.83) | 181,196.22 | (57,870.09) | 176,373.71 | (265,737.08) | 43,510.87 | 332,762.56 |
| Net Cash After Expense Cummulative | 38,658.81 | 130,798.17 | 183,707.01 | 302,938.60 | 105,856.07 | 188,859.25 | 336,111.30 | 554,418.76 | 255,288.93 | 436,485.15 | 378,615.06 | 554,988.77 | 289,251.69 | 332,762.56 | 332,762.56 |

**Note**
In week 3 money from insurance companies not worked by McKesson is part of the increase in collections of 65,000
In week 7 money from insurance companies not worked by McKesson is part of the increase in collections of another 45,000

**Note 3**
DIP Financing is needed to pay providers due on May 22nd.  Collections from Monday May 19 to Wednesday May 21 are not enough to pay the providers by the contract due date.  Not paying the providers by the contract due date will be a detriment to the company.  Bank fees are also paid on the 20th of the month.  Without DIP Financing funds are not available in time to pay providers.

**Anesthesia Healthcare Partners Inc.  13 week budget with cancelled sites**

| | First Three Days of Week Ending 5/23/2014 | Last Two Days of Week Ending 5/23/2014 | Week Ending 5/30/2014 | Week Ending 6/6/2014 | Week Ending 6/13/2014 | Week Ending 6/20/2014 | Week Ending 6/27/2014 | Week Ending 7/4/2014 | Week Ending 7/11/2014 | Week Ending 7/18/2014 | Week Ending 7/25/2014 | Week Ending 8/1/2014 | Week Ending 8/8/2014 | Week Ending 8/15/2014 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Patient Collections | 169,525.95 | 113,017.34 | 282,546.69 | 260,631.79 | 209,326.02 | 209,326.02 | 209,326.02 | 254,326.02 | 209,326.02 | 209,326.02 | 209,326.02 | 209,326.02 | 209,326.02 | 209,326.02 | 2,963,981.92 |
| Subsidy and Drug and Supply Income | | | | 31,110.00 | | | | 31,110.00 | | | | 31,110.00 | | | 93,330.00 |
| Total Revenue | 169,525.95 | 113,017.34 | 282,546.69 | 291,741.79 | 209,326.02 | 209,326.02 | 209,326.02 | 285,436.02 | 209,326.02 | 209,326.02 | 209,326.02 | 240,436.02 | 209,326.02 | 209,326.02 | 3,057,311.92 |
| **CRNA Providers** | | | | | | | | | | | | | | | |
| Total Providers CRNA Providers Expense | 135,117.13 | | | 135,117.13 | | 135,117.13 | | | 135,117.13 | | 135,117.13 | | 135,117.13 | | 810,702.78 |
| **MD Providers** | | | | | | | | | | | | | | | |
| Total MD Providers Expense | | | | | 199,172.08 | | | | 199,172.08 | | | | 199,172.08 | | 597,516.24 |
| Locum Expense | 10,000.00 | | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 130,000.00 |
| **Other Direct Cost for Sites** | | | | | | | | | | | | | | | |
| Billing Fees | | | | | | | 20,000.00 | | | | | | | | |
| Shipping Expense and Forms | | | 2,259.00 | | | | 2,259.00 | | | | 2,259.00 | | | | 6,777.00 |
| Drugs and Supplies | | | 33,054.00 | | | | 33,054.00 | | | | 33,054.00 | | | | 99,162.00 |
| Rent | | | | | 26,429.00 | | | | 26,429.00 | | | | | 26,429.00 | 79,287.00 |
| Total Other Direct Cost for Sites | - | | 35,313.00 | - | 26,429.00 | - | 55,313.00 | - | 26,429.00 | - | 35,313.00 | - | - | 26,429.00 | 205,226.00 |
| Total Sites Cost | 145,117.13 | | 45,313.00 | 145,117.13 | 235,601.08 | 145,117.13 | 65,313.00 | 10,000.00 | 370,718.21 | 10,000.00 | 180,430.13 | 10,000.00 | 344,289.21 | 36,429.00 | 1,743,445.02 |
| **Salaries and Wages Employees** | | | | | | | | | | | | | | | |
| **Total Salaries and Wage Expense** | | - | 109,678.56 | - | 47,178.56 | - | - | 109,678.56 | - | 47,178.56 | - | 109,678.56 | - | 47,178.56 | 470,571.36 |
| **Total Site and Employee Wages** | 145,117.13 | - | 154,991.56 | 145,117.13 | 282,779.64 | 145,117.13 | 65,313.00 | 119,678.56 | 370,718.21 | 57,178.56 | 180,430.13 | 119,678.56 | 344,289.21 | 83,607.56 | 2,214,016.38 |

**Anesthesia Healthcare Partners Inc.  13 week budget with cancelled sites**

| | First Three Days of Week Ending | Last Two Days of Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 5/23/2014 | 5/23/2014 | 5/30/2014 | 6/6/2014 | 6/13/2014 | 6/20/2014 | 6/27/2014 | 7/4/2014 | 7/11/2014 | 7/18/2014 | 7/25/2014 | 8/1/2014 | 8/8/2014 | 8/15/2014 | |
| **Overhead Expenses** | | | | | | | | | | | | | | | |
| 3077 & 3079 Rent | | | | 8,900.00 | | | | 8,900.00 | | | | 8,900.00 | | | 26,700.00 |
| 401K Match | | 606.00 | | 606.00 | | 606.00 | | 606.00 | | 606.00 | | | 606.00 | | 3,636.00 |
| ADP | | | 130.00 | | 200.00 | | 130.00 | | 200.00 | | 130.00 | | 200.00 | | 990.00 |
| American Express Corporate | | | 10,000.00 | | | | | | | | 20,000.00 | | | | 30,000.00 |
| AMEX Travel ins | | | | | 30.00 | | | | 30.00 | | | | | 30.00 | 90.00 |
| AT&T | | | | | 400.00 | | | | | 400.00 | | | | 400.00 | 1,200.00 |
| AT&T Mobility | | | | | 1,500.00 | | | | | 1,500.00 | | | | 1,500.00 | 4,500.00 |
| Bank Fees | 16,000.00 | | | | | | 16,000.00 | | | | 16,000.00 | | | | 48,000.00 |
| Beacon Info Systems | | | 1,500.00 | | | | 1,500.00 | | | | 1,500.00 | | | | 4,500.00 |
| Blue Grace Shipping | | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,600.00 |
| Century Link | | | | | | 155.00 | | | | 155.00 | | | | 155.00 | 465.00 |
| Cisco Capital | | | 4,400.00 | | | | 4,400.00 | | | | 4,400.00 | | | | 13,200.00 |
| Citadel Security | | | | | 120.00 | | | | 120.00 | | | | | 120.00 | 360.00 |
| Cobb EMC | | | | | 600.00 | | | | 600.00 | | | | 600.00 | | 1,800.00 |
| Cobb Water | | | | | | 75.00 | | | | 75.00 | | | | | 150.00 |
| Crescent Park | | | | | 683.72 | | | | 683.72 | | | | | 683.72 | 2,051.16 |
| Crystal Springs | | 180.00 | | | | 180.00 | | | | 180.00 | | | | | 540.00 |
| De Lage Landen | | | | | 2,600.00 | | | | 2,600.00 | | | | | 2,600.00 | 7,800.00 |
| Direct TV | | | | 145.00 | | | | 145.00 | | | | | 145.00 | | 435.00 |
| Employee Expense Checks | | 8,057.52 | | | | | 5,000.00 | | | | 5,000.00 | | | | 18,057.52 |
| G&S Rent | | 11,000.00 | | 11,000.00 | | | | | 11,000.00 | | | 11,000.00 | | | 44,000.00 |
| GA Power | | | | | | 1,000.00 | | | | 1,000.00 | | | | | 2,000.00 |
| Gas South | | | | | | 285.00 | | | | 285.00 | | | | 285.00 | 855.00 |
| GE Capital | | | | 5,300.00 | | | | | 5,300.00 | | | 5,300.00 | | | 15,900.00 |
| GE HealthCare | | | | | 4,000.00 | | | | 4,000.00 | | | | 4,000.00 | | 12,000.00 |
| Guardian | | | 1,332.35 | | | | | | 1,332.35 | | 1,332.35 | | 1,332.35 | | 5,329.40 |
| Imperial Premium Financing- Prof Liability | | | 13,066.27 | | | | 13,066.27 | | | | 13,066.27 | | | | 39,198.81 |
| Imperial Premium Malpractice Insurance | | | 17,321.82 | 4,109.26 | | | | | 4,109.26 | | | | 4,109.26 | | 29,649.60 |
| Iron Mountain | | | | | 363.48 | | | | | 363.48 | | | | 363.48 | 1,090.44 |
| IT Firm | | | | | | | 5,000.00 | | | | 5,000.00 | | | | 10,000.00 |
| Lincoln Life | | | 584.70 | | | | 584.70 | | | | 584.70 | | | | 1,754.10 |
| MD Solutions | | | 15,000.00 | | | | 15,000.00 | | | | 15,000.00 | | | | 45,000.00 |
| Medical Maintenance | | | 1,342.80 | | | | | | | | | | | | 1,342.80 |
| MedKinetics | | | | | 1,577.00 | | | | 1,577.00 | | | | 1,577.00 | | 4,731.00 |
| Medpoint | | | 1,362.00 | | | | | | | | | | | | 1,362.00 |
| Mills & Hoopes | | | | | | | 10,000.00 | | | | 10,000.00 | | | | 20,000.00 |
| Miscellaneous | | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 3,250.00 |
| NY Life | | | | | 615.25 | | | | 615.25 | | | | 615.25 | | 1,845.75 |
| Quality Technology | | | | 3,400.00 | | | | | 3,400.00 | | | | | 3,400.00 | 10,200.00 |
| Rodney Moore- lawn care | | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,300.00 |
| Scana Energy | | | | 700.00 | | | | | 700.00 | | | | 700.00 | | 2,100.00 |
| SOS | | 484.46 | | | 600.00 | | | | 600.00 | | | | 600.00 | | 2,284.46 |
| Sunbelt Office | | | | 1,000.00 | | | | 1,000.00 | | | | | 1,000.00 | | 3,000.00 |
| Sunbelt Printing | | | 1,360.00 | | | | 500.00 | | | | 500.00 | | | | 2,360.00 |
| SunTrust Interest | | | | | 49,583.34 | | | | 49,583.34 | | | | | 49,583.34 | 148,750.02 |
| Superior Answering Service | | | | | | | 72.00 | | | | 72.00 | | | 72.00 | 216.00 |
| Tax Distribution | | | 23,538.00 | | | | 23,538.00 | | | | 23,538.00 | | | | 70,614.00 |
| Ted Stapleton, Attorney | | | | | | | 10,000.00 | | | | 10,000.00 | | | | 20,000.00 |
| UHC | | | 15,000.00 | | | | 15,000.00 | | | | 15,000.00 | | | | 45,000.00 |
| Verizon Wireless | | | | | | 1,600.00 | | | | 1,600.00 | | | | 1,600.00 | 4,800.00 |
| Windstream | | | | | | 6,500.00 | | | | 6,500.00 | | | | 6,500.00 | 19,500.00 |
| DIP Financing Repayment | | | | | | | | | | | | | | | |
| **Total Overhead Expenses** | 16,000.00 | 20,877.98 | 74,642.89 | 64,842.56 | 72,707.54 | 4,451.00 | 89,756.27 | 60,733.30 | 17,066.26 | 63,946.54 | 110,011.27 | 57,667.05 | 10,102.51 | 73,702.89 | 720,508.06 |
| | | | | | | | | | | | | | | | - |
| Net Cash After Expense | 8,408.82 | 92,139.36 | 52,912.24 | 81,782.10 | (146,161.16) | 59,757.89 | 54,256.75 | 105,024.16 | (178,458.45) | 88,200.92 | (81,115.38) | 63,090.41 | (145,065.70) | 52,015.57 | 106,787.48 |
| | | | | | | | | | | | | | | | - |
| Net Cash After Expense Cummulative | 8,408.82 | 100,548.18 | 153,460.42 | 235,242.52 | 89,081.36 | 148,839.24 | 203,095.99 | 308,120.14 | 129,661.69 | 217,862.60 | 136,747.22 | 199,837.62 | 54,771.92 | 106,787.48 | 106,787.48 |

**Note**

In week 3 money from insurance companies not worked by McKesson is part of the increase in collections of 65,000

In week 7 money from insurance companies not worked by McKesson is part of the increase in collections of another 45,000