IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | : |
| | : |
| | : |
| **ANESTHESIA HEALTHCARE** | : Case No. 14-59631-wlh |
| **PARTNERS, INC.,** | : |
| | : |
| Debtor. | : Chapter 11 |
| _____ | : |
| IN RE: | : |
| | : |
| | : |
| **AHP ASSOCIATES OF TEXAS, P.A.,** | : Case No. 14-59632 |
| | : |
| Debtor. | : Chapter 11 |
| _____ | : |
| IN RE: | : |
| | : |
| | : |
| **AHP OF CENTRAL GEORGIA, P.C.,** | : Case No. 14-59633 |
| | : |
| Debtor. | : Chapter 11 |
| _____ | : |
| IN RE: | : |
| | : |
| | : |
| **AHP OF ILLINOIS, INC.,** | : Case No. 14-59634 |
| | : |
| Debtor. | : Chapter 11 |
| _____ | : |
| IN RE: | : |
| | : |
| | : |
| **AHP OF NORTH CAROLINA, INC.,** | : Case No. 14-59635 |
| | : |
| Debtor. | : Chapter 11 |
| _____ | : |
| IN RE: | : |
| | : |
| | : |
| **AHP OF NORTHWESTERN** | : Case No. 14-59636 |
| **LOUISIANA, LLC,** | : |
| | : |

DMSLIBRARY01:23000222.7

|  |  |
|---|---|
| Debtor. | : Chapter 11 |

|  |  |
|---|---|
| IN RE: | : |
|  | : |
| **AHPM OF GEORGIA, INC.,** | : Case No. 14-59637 |
|  | : |
|  | : |
| Debtor. | : Chapter 11 |

|  |  |
|---|---|
| IN RE: | : |
|  | : |
| **ANESTHESIA HEALTHCARE** | : Case No. 14-59639 |
| **PARTNERS OF FLORIDA, INC.,** | : |
|  | : |
| Debtor. | : Chapter 11 |

|  |  |
|---|---|
| IN RE: | : |
|  | : |
| **HBL ANESTHESIA** | : Case No. 14-59640 |
| **SERVICE, LLC,** | : |
|  | : |
| Debtor. | : Chapter 11 |

|  |  |
|---|---|
| IN RE: | : |
|  | : |
| **MEDFINANCIAL, LLC,** | : Case No. 14-59641 |
|  | : |
|  | : |
| Debtor. | : Chapter 11 |

**SUNTRUST BANK'S LIMITED OBJECTION TO DEBTORS'
MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND TO
<u>PROVIDE ADEQUATE PROTECTION</u>**

COMES NOW SunTrust Bank ("<u>SunTrust</u>") as a creditor in the above-captioned proceeding and files this limited objection (the "<u>Objection</u>") to the Debtors' *Motion for Authority to Use Cash Collateral and to Provide Adequate Protection Therefore* (the "<u>Motion</u>"). (Doc. No. 7). In support of this Objection, SunTrust respectfully represents as follows:

2

**Background**

1.  On May 15, 2014 (the "Petition Date") the Debtors referenced above (collectively, the "Debtors"), each filed the above referenced chapter 11 cases (the "Cases").

2.  On May 19, 2014, the Debtors also filed this Motion seeking, among other things, authorization to use cash collateral for purposes of maintaining their operations as providers of anesthesia management and other related business services to health care entities in accordance with a proposed budget and to provide adequate protection to the Lenders (as defined by the Credit Agreement).

**Prepetition Secured Credit Facility**

3.  On August 28, 2009, the Debtor, Anesthesia Healthcare Partners, Inc. ("AHP Inc."), the several banks and other financial institutions and lenders from time to time party thereto (the "Lenders"), and SunTrust, as administrative agent, entered into that certain Credit Agreement (as amended by that First Amendment to Credit Agreement dated as of December 21, 2009, that certain Second Amendment to Credit Agreement dated as of October 27, 2010, that certain Third Amendment to Credit Agreement dated as of June 10, 2011, that certain Fourth Amendment to Credit Agreement dated as of January 1, 2013, that certain Forbearance Agreement dated as of November 27, 2013, and that certain Forbearance Agreement dated as of April 1, 2014 and as further amended, modified, extended, restated, amended and restated, replaced, or supplemented from time to time, the "Credit Agreement").[1] AHP Inc.'s obligations, as borrower, and the remaining Debtors' obligations, as guarantors, are evidenced by, among other documents, the Credit Agreement, that certain Guaranty and Security Agreement dated as

---

1 SunTrust is the sole Lender under the Credit Agreement.

3

of August 28, 2009, UCC-1 Financing Statements, related guaranties and agreements and other Loan Documents (as that term is defined in the Credit Agreement).

4. SunTrust is a secured creditor of the Debtors on account of certain loans made and funds advanced to the Debtors (the "Loans") pursuant to the Credit Agreement. SunTrust's Loans are secured by security interests in substantially all of the Debtors' tangible and intangible property, real and personal, including among other things, all accounts, deposit accounts, contracts, inventory, equipment, management agreements, patents, copyrights, trademarks, pledged securities, notes and intercompany obligations between the Debtors, and general intangibles now outstanding or hereafter arising, and all cash and noncash proceeds of any of the foregoing of the Debtors all as more particularly described in the Loan Documents.

5. As of May 15, 2014, SunTrust was owed in the total principal amount approximately $8,500,000.00, plus accrued and unpaid interest and all costs, fees and expenses and charges payable under the Loans. SunTrust's Loans consist of Revolving Loans in the principal amount of $4,000,000.00 (inclusive of a $1,000,000.00 over advance) and Term Loans in the principal amount of $4,500,000.00.

## Limited Objections

6. SunTrust will consent to the use of its cash collateral to sustain the Debtors' operations as requested in the Motion subject to the objections set forth below, provided that the Debtors' use of cash collateral adheres to a budget agreed upon by SunTrust, the Court enters an interim order granting SunTrust adequate protection, and on other terms and conditions reasonably satisfactory to SunTrust.

7. SunTrust objects to the proposed budget (Doc. No. 7) (the "Budget") to the extent that it provides for ongoing payment of: (x) Tax Distributions on behalf of Mr. Sean Lynch

4

("Lynch"), (y) lease payments made to SML Holdings, LLC and G&S Duluth Holdings, LLC, and (z) the Debtors' professional fees without further order of the Court.

8. SunTrust's secured claims have a higher priority than the personal tax claims held by Lynch, the lease payments to entities owned wholly or in part by Lynch, and the Debtors' professional fees. Secured claims have a higher priority under the Bankruptcy Code than claims with administrative priority. See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 5 (2000) (secured claims have higher priority than administrative claims).

9. With respect to Lynch's Tax Distribution, to be an acceptable post-petition obligation, the tax expense must be incurred by the Debtors' estates, not a "pass through" payment to satisfy Lynch's personal tax exposure. See In re Green, 182 B.R. 532, 534 (Bankr. C.D. Ill 1995) (to be "allowed as an administrative expense the taxes must be incurred by the [partnership] estate"). As such, the personal tax liability that arises out of Lynch's Subchapter S taxable income is not attributable to the Debtors' estates, does not benefit the estates and should not be paid as an administrative expense out of SunTrust's cash collateral. See The Travelers Ins. Co. v. Plaza Family P'ship (In re Plaza Family P'ship), 95 B.R. 166, 174 (E.D. Cal. 1989) (rejecting the use of debtor-partnership's use of cash collateral to pay individual tax liability of partners, even though creditors were adequately protected, the court reasoned that "individual partners of the debtor are not entitled to a distribution before . . . a secured creditor"); see also Gilliam v. Speier (In re KRSM Properties, LLC), 318 B.R. 712, 720 (B.A.P. 9th Cir. 2004) (ordering the turnover of funds paid by the debtor-limited liability company to the U.S. Internal Revenue Service and state tax board for estimated personal income taxes owed by the members of the debtor, the court concluded that "payment of the owners' personal income taxes must first give way to payment of the LLC's creditors").

10. The Debtors are allegedly current on the lease payments to SML Holdings, LLC and G&S Duluth Holdings, LLC (collectively, the "Lynch Landlords"). Lynch owns 100% of each of the Debtors and SML Holdings, LLC and 50% of G&S Duluth Holdings, LLC. *Declaration of Sean M. Lynch in Support of First Day Motions* at 3, 6 (Doc. No. 13). When debtors seek to pay rent as an administrative claim, "the contractual rent may not be clearly unreasonable." Gwinnett Prado, L.P. v. Rhodes, Inc. (In re Rhodes, Inc.), 321 B.R. 80 (Bankr. N.D. Ga. 2005). In this instance, no leases have been submitted by the Lynch Landlords making it impossible to determine whether the lease payments are reasonable and actual and necessary to preserve the estate. Consequently, SunTrust objects to the use of its cash collateral to make ongoing payments of rent to the Lynch Landlords without further disclosure of the obligations under the leases.

11. Professionals <u>retained</u> by the Debtor may be compensated only for services and expenses that are "actual [and] necessary." 11 U.S.C. § 330(a)(1)(B). In determining whether the Debtors' professional fees are reasonable and should be authorized, Courts must consider "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case." 11 U.S.C. § 330(a)(3)(C). The party seeking compensation "bears the burden of establishing that she is entitled to certain expenses," and "courts will not assume any expense is necessary." In re Palladino, 267 B.R. 825, 833 (Bankr. N.D. Ill. 2001); In re Dabney, 417 B.R. 826, 834 (Bankr. N.D. Ga. 2009). "Even fees pre-approved under section 328 must be applied for, in accordance with the procedures set forth in section 330, and authorized by the bankruptcy court." In re Dan River, Ch. 11 Case No. 04-10990-WHD, 2005 Bankr. LEXIS 2163, at *22 (Bankr. N.D. Ga. Sept. 30, 2005). As such, the ongoing payment of Debtors' professional fees as set forth in the Budget without further

examination and order by the Court is improper. This is especially true as to the Mills & Hoopes firm where it has not been retained by the Debtors and Ted Stapleton is serving as the Debtors' bankruptcy counsel.

12.  Whether pursuant to the priority scheme of the Bankruptcy Code or to a contractual arrangement, any claims held by Lynch on account of future tax liabilities, the Lynch Landlords and the professionals retained by the Debtors are subordinate to SunTrust's claims. Accordingly, if there is excess cash collateral that would be available to pay claims unrelated to the Debtors' post-petition operations, (*i.e.*, Lynch's claims, the Lynch Landlords' claims and Debtors' professional fees) such excess cash collateral should be used to pay down SunTrust's higher priority secured claims. Even with making the aforementioned payments – to which SunTrust does not consent – the Debtors' Budget suggests excess cash collateral available in 13 weeks to be approximately $492,000.00.

13.  SunTrust accepts the Debtors' offer of adequate protection as set forth in the Motion (i.e., cash payment of monthly interest, payment of professional fees and costs incurred on behalf of SunTrust, and replacement liens, etc.). However, the Debtors have offered no adequate protection to SunTrust in exchange for the proposed uses of cash collateral to which SunTrust objects, which is required in the absence of SunTrust's consent. See 11 U.S.C. §§ 363(c)(2), (e). Accordingly, the Court should not allow the Debtors to use SunTrust's cash collateral to make payments to (i) Lynch on account of the Tax Distributions, (ii) the Lynch Landlords and (iii) Debtors' professionals, without further order from the Court.

Accordingly, SunTrust respectfully requests, in addition to the adequate protection offered by the Debtor, that the Court:

(a)  Require the Debtors to revise the Budget such that cash collateral will not be used for payments to Lynch, the Lynch Landlords and Debtors' professionals without further

7

authorization from the Court;

    (b)    Require the Debtors to pay over to SunTrust excess cash collateral not required to sustain the Debtors' operations and apply such cash to SunTrust's outstanding claims; and

    (c)    Grant such other relief as may be just and proper.

This 21st day of May, 2014.

Respectfully submitted,

KING & SPALDING LLP

/s/ Jesse H. Austin, III
Jesse H. Austin, III
Georgia Bar No. 028812
jaustin@kslaw.com
Jonathan W. Jordan
Georgia Bar No. 404874
jjordan@kslaw.com
Michele J. Kim
Georgia Bar No. 707326
mkim@kslaw.com
King & Spalding LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309-3521
Telephone: (404) 572-4600
Fax: (404) 572-5131

COUNSEL FOR SUNTRUST BANK

## CERTIFICATE OF SERVICE

I hereby certify that on this day, an electronic copy of the of the foregoing was filed using the Court's ECF System which caused electronic notification of filing to be served on all registered users of the ECF System that have requested such notification regarding this Debtor's bankruptcy case and the following parties via email:

>Theodore Stapleton (tstaple@tstaple.com)
>Theodore N. Stapleton, PC


>James H. Morawetz (Jim.H.Morawetz@usdoj.gov)
>Office of the United States Trustee


This 21st day of May, 2014.

>Respectfully submitted,
>
>KING & SPALDING LLP
>
>
>/s/ Jesse H. Austin, III
>Jesse H. Austin, III
>Georgia Bar No. 028812
>jaustin@kslaw.com
>Jonathan W. Jordan
>Georgia Bar No. 404874
>jjordan@kslaw.com
>Michele J. Kim
>Georgia Bar No. 707326
>mkim@kslaw.com
>King & Spalding LLP
>1180 Peachtree Street, N.E.
>Atlanta, Georgia  30309-3521
>Telephone:  (404) 572-4600
>Fax:  (404) 572-5131
>
>COUNSEL FOR SUNTRUST BANK